FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

2015 JUN 26  P 4: 06

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

CAROLYN WITT :
TYRONE HENDERSON :
JAMES O. HINES, JR. :
JOHN MOORE :
*on behalf of themselves and all others* :
*similarly situated,* :
  :
    Plaintiffs, :
  :
v. :   Civil Action No.: _3 : 15 CV 386_
  :   _REP_
CORELOGIC SAFERENT, LLC :
  :
SERVE: Corporation Service Company :
    Bank of America Center, 16th Fl. :
    1111 E. Main Street :
    Richmond, VA 23219 :
  :
    Defendant. :

## CLASS ACTION COMPLAINT

COME NOW, the Plaintiffs, Carolyn Witt, Tyrone Henderson, James O. Hines, Jr., and

John Moore, on behalf of themselves and all similarly situated individuals, and for their Class

Action Complaint against the Defendant, they state as follows:

### INTRODUCTION

1.    Carolyn Witt, Tyrone Henderson, and James O. Hines, Jr., bring this class action

against Defendant to obtain relief for themselves and the class they propose to represent for

violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*   Each of these

Plaintiffs as well as John Moore also brings an individual claim for the Defendant's failure to

maintain reasonable procedures designed to ensure the accuracy of the consumer reports that

were sold regarding them.

2.      Defendant is a consumer-reporting agency that compiles and maintains files on consumers on a nationwide basis. It maintains an extensive database of public records regarding consumers. It then sells consumer reports generated from the database and furnishes these consumer reports to National Background Data, Inc., who then sells them to other reseller consumer-reporting agencies who, in turn, rebrand them and sell them to employers for use in making employment decisions regarding current and potential employees. Defendant and the resellers never reveal to the consumer that they are the source from which this original report was generated and repeatedly sold.

3.      Plaintiffs Witt, Henderson, and Hines also allege a class claim under 15 U.S.C. § 1681k because Defendant did not provide them and other similarly situated consumers timely and lawful notice that it was furnishing an employment purposed consumer report at the time it did so. This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the consumer-reporting agency to obtain and, as appropriate, correct information in the furnished report. It also was intended to alert the consumer to the employer's use of the report to provide them the opportunity to address any concerns or derogatory history in the report directly with the employer. Defendant's failure to comply with these long standing requirements denied Plaintiffs Witt, Henderson, and Hines and each putative class member these important rights.

## JURISDICTION

4.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b) as the Defendant regularly does business in the district and division.

## PARTIES

5.     Plaintiffs are each a natural person and a "consumer" as protected and governed by the FCRA.

6.     Defendant CoreLogic, SafeRent, LLC ("SafeRent") is a Delaware limited liability company that is registered to conduct business in Virginia.

7.     SafeRent sells criminal and employment-purposed background checks on a wholesale basis.  Consumers do not typically even know that an employment report originated from Defendant.

8.     According to Defendant, "CoreLogic SafeRent is a consumer reporting agency that provides information to the multi-family housing industry and to employers. . . . Employers may obtain your consumer report to assist them in making employment decisions.  CoreLogic SafeRent maintains information regarding landlord tenant and criminal public court records about individuals."

9.     SafeRent is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## FACTUAL ALLEGATIONS

### Factual Allegations Regarding Plaintiff Witt

10.     On or about February 16, 2012, Plaintiff Witt interviewed for employment with CMA, CGM, Inc. ("CMA"). CMA offered Plaintiff Witt a position of Expert Documentation Coordinator.

11.     On or about February 21, 2012, CMA provided a formal, written job offer to Plaintiff Witt, subject to the completion of a satisfactory background check.

3

12.     On or about February 22, 2012, CMA requested a background check from a reseller consumer-reporting agency, HR Plus.

13.     HR Plus requested, and subsequently received, a consumer report regarding Plaintiff Witt from National Background Data.

14.     In order to fulfill HR Plus's request, National Background Data obtained Plaintiff Witt's consumer report from the Defendant.

15.     This consumer report was thereafter provided up this stream of resellers to CMA.

16.     The report that Defendant SafeRent provided to National Background Data contained several "hits" attributed to Plaintiff Witt, including purported criminal conviction public records contained within SafeRent's database.

17.     These criminal conviction public records were likely to have an adverse effect on Plaintiff Witt's ability to obtain or maintain employment.

18.     Plaintiff Witt never received a letter or any other communication from Defendant SafeRent "at the time" the report was furnished to National Background Data.

19.     Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon Plaintiff Witt's ability to obtain or maintain employment, Defendant SafeRent failed to provide Plaintiff Witt with notice "at the time" that it made the report containing the public record information, together with the name and address of the person(s) to whom such information was being reported.

20.     Furthermore, the criminal conviction public records that Defendant SafeRent attributed to the Plaintiff Witt did not belong to her. Instead, they concerned a woman with a similar last name to Plaintiff Witt who was entirely unrelated to her and had a different racial background.

4

21.     They were also incomplete, as they did not contain a social security number.

22.     On February 27, 2012, Plaintiff Witt began her employment with CMA.

23.     On February 29, 2012, after arriving at work, Plaintiff Witt was called into the office of the Human Resources Manager and was informed that she had an extensive criminal history, which included several felonies and a prison sentence. Plaintiff Witt quickly informed the Human Resources Manager that she did not have any type of criminal history, felony convictions and has never served time in prison. Plaintiff Witt further informed the Human Resources Manager that the information provided to it by HR Plus was false. Nonetheless, Plaintiff Witt was still terminated from her employment with CMA.

24.     On February 29, 2012, Plaintiff Witt obtained a letter from the City of Virginia Beach Police Department stating that a police record check reflected that Plaintiff Witt had no criminal convictions in the City of Virginia Beach Virginia. She was able to obtain these records from the Police Department without any delay or difficulty and simply by asking.

25.     In creating and furnishing Plaintiff Witt's consumer report, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible. For example, it allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger of a different race within Plaintiff Witt's consumer report.

26.     Defendant's failure to follow these reasonable procedures was a substantial factor in the termination of Plaintiff Witt's employment and other related actual harm she suffered. As a result of the consumer report, CMA terminated Plaintiff Witt's employment.

### Factual Allegations Regarding Plaintiff Henderson

27.     In or around August-September 2009, Plaintiff Henderson applied for a job with Interstate Brands Corporation ("IBC").

5

28.     Plaintiff Henderson's application required that he complete a satisfactory background check.

29.     On or around November 9, 2009, IBC requested a background check from a reseller consumer-reporting agency, Verifications, Inc.

30.     Verifications, Inc. requested, and subsequently received, a consumer report regarding Plaintiff Henderson from National Background Data.

31.     In order to fulfil Verifications, Inc.'s request, National Background Data obtained Plaintiff Henderson's consumer report from the Defendant.

32.     This consumer report was thereafter provided up this stream of resellers to IBC.

33.     Plaintiff Henderson also discovered in collateral litigation against Verifications, Inc. that HR Plus had also ordered Plaintiff Henderson's background report from National Background Data, and thus, from the Defendant, to provide to one or more of Plaintiff Henderson's prospective employers.

34.     The reports that Defendant SafeRent provided to National Background Data contained several "hits" attributed to Plaintiff Henderson, including purported criminal conviction public records contained within SafeRent's database.

35.     These criminal conviction public records were likely to have an adverse effect on Plaintiff Henderson's ability to obtain or maintain employment.

36.     Plaintiff Henderson never received a letter or any other communication from Defendant SafeRent "at the time" the reports were furnished to National Background Data.

37.     Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon Plaintiff Henderson's ability to obtain or maintain employment, Defendant SafeRent failed to provide Plaintiff Henderson with notice "at

6

the time" that it made the report containing the public record information, together with the name and address of the person(s) to whom such information was being reported.

38.     Furthermore, the criminal conviction public records that Defendant SafeRent attributed to the Plaintiff Henderson did not belong to him. Instead, they concerned a man with a similar name to the Plaintiff who was entirely unrelated to him and had a different social security number.

39.     As soon as Verifications and HR Plus received the National Background Data reports, they place the same within a reseller-branded consumer report regarding Mr. Henderson that were provided to Plaintiff Henderson's prospective employers. While these reports did not contain the details of the Pennsylvania convictions, they did report that Plaintiff Henderson's history had come back with these "hits" in a search of his national criminal background.

40.     Defendant's failure to follow reasonable procedures to assure that its reports regarding Plaintiff Henderson did not include information regarding a different person was a substantial factor in the rejection of Plaintiff Henderson's employment applications and other related actual harm that he suffered. As a result of these consumer reports, Henderson's prospective employers withdrew all offers of employment.

41.     Later, after losing the IBC job as a result of the Defendant's report, Plaintiff Henderson was able to obtain, just by asking the court clerk directly, a copy of the actual Westmoreland County criminal records.

42.     The Pennsylvania records from the Court confirm that they do not belong to Plaintiff Henderson and do not match his social security number.

43.     The Pennsylvania public records contained a social security number for the person about whom the records regarded.

7

44.     In accordance with its standard procedure, Defendant purchased or obtained criminal records in bulk and thus without the identifying information, such as social security numbers. In fact, Defendant obtains social security numbers from less than one percent of the jurisdictions from which it obtains criminal records.

45.     In creating and furnishing Plaintiff Henderson's consumer report, Defendant failed to follow reasonable procedures to assure that the reports it furnished were as accurate as maximally possible. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Plaintiff's consumer report.

### Factual Allegations Regarding Plaintiff Hines

46.     In or around May 2011, Plaintiff Hines applied for employment with CareSouth Homecare Professionals ("CareSouth").

47.     Plaintiff Hines's application required that he complete a satisfactory background check.

48.     On or about June 1, 2011, CareSouth requested a background check from a reseller consumer-reporting agency, ADP Screening and Selection Services ("ADP").

49.     ADP requested, and subsequently received, a consumer report regarding Plaintiff Hines from National Background Data.

50.     In order to fulfil ADP's request, National Background Data obtained Plaintiff Hines's consumer report from the Defendant.

51.     This consumer report was thereafter provided up this stream of resellers to CareSouth.

52.     The report that Defendant SafeRent provided to National Background Data

8

contained information that identified Plaintiff Hines as a registered sex offender in Indiana.

53.  These public record information was likely to have an adverse effect on Plaintiff Hines's ability to obtain or maintain employment.

54.  Plaintiff Hines never received a letter or any other communication from Defendant SafeRent "at the time" the report was furnished to National Background Data.

55.  Despite providing a report for employment purposes containing public record information likely to have an adverse effect upon Plaintiff Hines's ability to obtain or maintain employment, Defendant SafeRent failed to provide Plaintiff Hines with notice "at the time" that it made the report containing the public record information, together with the name and address of the person(s) to whom such information was being reported.

56.  Furthermore, the public record information that Defendant SafeRent attributed to the Plaintiff did not belong to him. Instead, they concerned a different individual with a similar name to Plaintiff Hines who was entirely unrelated to him and had a different social security number.

57.  Plaintiff is not a sex offender.

58.  Plaintiff has never even been to Indiana.

59.  In creating and furnishing Plaintiff Hines's consumer report, Defendant failed to follow reasonable procedures to assure that the reports it furnished were as accurate as maximally possible. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Plaintiff's consumer report.

60.  Defendant's failure to follow reasonable procedures to assure that its reports regarding Plaintiff Hines did not include information regarding a different person was a

substantial factor in the rejection of Plaintiff Hines's employment application by CareSouth and other related actual harm that he suffered.

### Factual Allegations Regarding Plaintiff Moore

61.     In early 2015, Plaintiff Moore applied to rent an apartment at two different apartment complexes, Hermitage at Beechtree and Cumberland Cove Apartments.

62.     In connection with Plaintiff Moore's rental application, the apartment complexes requested his background consumer report from the Defendant.

63.     Thereafter, Defendant provided Plaintiff Moore's consumer background report to both apartment complexes.

64.     The report that Defendant furnished to the apartment complexes regarding Plaintiff Moore included public record information that did not belong to him. Instead, they concerned a different individual with a similar name to Plaintiff who was entirely unrelated to him and had a different social security number.

65.     For example, Defendant's report stated that Plaintiff Moore had been convicted of distribution of drugs to a minor, voluntarily manslaughter, and sexual battery.

66.     None of these convictions belonged to Plaintiff Moore.

67.     In creating and furnishing Plaintiff Moore's consumer report, Defendant failed to follow reasonable procedures to assure that the reports it furnished were as accurate as maximally possible. For example, Defendant allowed and/or used very loose match criteria to determine whether to include information pertaining to a stranger with a different social security number living in a different state at a different address within Plaintiff's consumer report.

68.     Defendant's failure to follow reasonable procedures to assure that its reports regarding Plaintiff Moore did not include information regarding a different person was a

substantial factor in the rejection of Plaintiff Moore's application at both apartment complexes and other related actual harm that he suffered.

**Factual Allegations Regarding Plaintiffs Witt, Henderson, and Hines**

69.     Plaintiffs allege that Defendant did not attempt, for any consumer, to follow the option available at 15 U.S.C. § 1681k(a)(2). This section can only be applicable if the Defendant had in place—before any report was furnished—strict procedures designed to ensure that it did not furnish or include in its reports public records for which it did not receive, possess, or provide the complete and up-to-date public record. A § 1681k(a)(2) option is not available to the Defendant because the public records it furnishes to third parties are summaries, indexes, or partial records that it obtains from its courthouse sources. The Defendant never furnishes the complete and up-to-date public record. Even if it possessed the complete public record—which it does not—the Defendant does not use a SSN field for the public records it includes in its consumer reports. Therefore, even the question—does the Defendant know if there is a social security number associated with the record—cannot be answered with the specific public records in its reports. Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

70.     Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

71.     Defendant obtained or had available substantial written materials that apprised it of its duties under the FCRA.

72.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and deprived Plaintiffs and other members of the class of their rights

11

under the FCRA.

73.     Plaintiffs allege that Defendant's conduct as alleged herein was consistent with its

established and systematically executed procedures and policies for compliance with the FCRA.

**COUNT I – FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681k(a)(1)**
**(Class Claim by Plaintiffs Witt, Henderson, and Hines)**

74.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set

forth at length herein.

75.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Witt,

Henderson, and Hines bring this action for themselves and on behalf of a class (the "1681k

Class") defined as follows:

> All natural persons residing in the United States (a) who were the subject of a
> report sold by the Defendant; (b) where Defendant's database indicates that it was
> furnished for an employment purpose; (c) where Defendant's database showed
> that the report contained at least one adverse criminal record "Hit"; (d) within five
> years next preceding the filing of this action and during its pendency.

> Excluded from the class definition are any employees, officers, directors of
> Defendant, any attorney appearing in this case, and any judge assigned to hear
> this action.

76.     Plaintiffs alleges an alternate sub-class as follows:

> All natural persons residing in the United States (a) who were the subject of a
> report sold by Defendant; (b) where Defendant's database indicates that it was
> furnished for an employment purpose; (c) where Defendant's database showed
> that the report contained at least one adverse criminal record "Hit" from a
> jurisdiction from which Defendant does not obtain at least four digits of an
> associated social security number; (d) within five years next preceding the filing
> of this action and during its pendency.

> Excluded from the class definition are any employees, officers, directors of
> Defendant, any attorney appearing in this case, and any judge assigned to hear
> this Action.

12

77.     Plaintiffs incorporate their prior allegations and estimate that the class is so numerous that joinder of all members is impractical. The names and addresses of the class members are identifiable through documents maintained by the Defendant and the class members may be notified of the pendency of this action by published and/or mailed notice.

78.     Upon information and belief, Defendant SafeRent does not sent the required notices to any consumer at the time that it provides an employment-purposed consumer report to an end-user that contains public record information that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment. Upon information and belief, this conduct is consistent and uniform across time, jurisdictions, and consumers.

79.     There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. For example, and without limitation: (a.) whether Defendant's conduct and procedures were uniform to the class members; (b.) whether Defendant sent the required notices; (c.) if the notices where sent, when they were placed in the mail; and (d.) whether Defendant acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices.  Even the appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question.

80.     Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.  The Defendant routinely failed to send the required notices during the full class period. The violation alleged is the same and the class claim will rise and fall entirely based upon whether or not Plaintiffs' claim rises or falls.

81.     The Plaintiffs will fairly and adequately protect the interests of the class.  The Plaintiffs have retained counsel experienced in handling actions involving unlawful practices

against consumers and class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action. The Plaintiffs are aware of their responsibilities to the putative class and have accepted such responsibilities.

82.     Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

83.     Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendant has acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

84.     Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

     a.     As alleged above, the questions of law or fact common to the members of the class predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

     b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by the Defendant's FCRA violation would likely be unaware of their rights under the law, or who they could find to

represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

85.     Defendant's failure to timely provide the required FCRA notices to Plaintiffs Witt, Henderson, and Hines and the putative class members violated 15 U.S.C. § 1681k(a)(1).

86.     Defendant's conduct, action, and inaction were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

87.     Plaintiffs Witt, Henderson, and Hines and the putative class members are entitled to recover costs and attorney's fees, as well as appropriate equitable relief, from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88.     As a result of these FCRA violations, Defendant is liable to Plaintiffs Witt, Henderson, and Hines and to each class member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorney's fees and costs pursuant to § 1681n.

**COUNT II - FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**
**(Individual Claim by All Plaintiffs)**

89.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding the Plaintiffs.

15

91.     As a result of Defendant's conduct, Plaintiffs suffered actual damages.

92.     Defendant's violation of 15 U.S.C. § 1681e(b) was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

93.     Plaintiffs are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiffs, on behalf of themselves and the putative class members, move for class certification and for statutory and punitive damages, as well as their attorney's fees and costs against the Defendant for their class claim, as well as actual, statutory, and punitive damages and attorney's fees and costs for their individual claim; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,
**PLAINTIFFS,**
*on behalf of themselves and on behalf of*
*all similarly situated individuals,*

By: _____
Matthew James Erausquin (VSB # 65434)
Casey S. Nash (VSB # 84261)
CONSUMER LITIGATION ASSOCIATES, PC
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
matt@clalegal.com
casey@clalegal.com

Leonard Anthony Bennett (VSB #37523)
Susan Mary Rotkis (VSB # 40693)
CONSUMER LITIGATION ASSOCIATES, PC
12515 Warwick Blvd., Suite 1000
Newport News, Virginia 23606
lenbennett@cox.net
srotkis@clalegal.com

Dale W. Pittman (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb St.
Petersburg, VA 23803
Telephone:  (804) 861-6000
Facsimile:  (804) 861-3362
dale@pittmanlawoffice.com

James Arthur Francis (*pro hac vice* forthcoming)
David A. Searles (*pro hac vice* forthcoming)
FRANCIS & MAILMAN PC
Land Title Building
100 S Broad Street, 19th Floor
Philadelphia, PA  19110
Telephone: 215-735-8600
Facsimile: 215-940-8000
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com