IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CAROLYN WITT, et al.,

       Plaintiffs,

v.                           Civil Case No. 3:15-cv-386

CORELOGIC SAFERENT, LLC, et al.,

       Defendants.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANTS' MOTION FOR RECONSIDERATION (ECF No. 60).  For the reasons set forth herein, the motion will be granted in part and denied in part.

## BACKGROUND

On February 2, 2016, Plaintiffs Carolyn Witt ("Witt"), Alphonso Robertson ("Robertson"), Christopher Allen ("Allen"), Eric Gonzalez ("Gonzalez"), Jourdin Edwards ("Edwards"), Lewis Hackett II ("Hackett"), Tony White ("White"), Shondel Roberts ("Roberts"), Willie Stanley, Jr. ("Stanley"), and David Holmes ("Holmes") (collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC," ECF No. 50) on behalf of themselves and all others similarly situated.  In the SAC, Plaintiffs allege that defendants, CoreLogic SafeRent, LLC ("SafeRent") and its sister company CoreLogic National Background Data, LLC ("NBD") (collectively, "Defendants"), violated the Fair Credit Reporting

1

Act ("FCRA").   The SAC alleges three Counts[1] under the FCRA. Count I, brought against SafeRent on behalf of a putative nationwide class, alleges that SafeRent violated 15 U.S.C. § 1681k(a), which requires consumer reporting agencies that sell certain types of public records for employment purposes to either (1) notify the consumer "at the time" the records are furnished; or (2) "maintain strict procedures" to ensure that the public record information is "complete and up-to-date."   15 U.S.C. § 1681k(a).

The class alleged in Count I is:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant SafeRent; (b) where Defendant SafeRent's database indicates that the report was furnished for an employment purpose; (c) Defendant SafeRent's database showed that the report contained at least one adverse criminal record "hit;" (d) within the five period preceding the filing of this action and during pendency.
>
> Excluded from the class definition are any employees, officers, directors of Defendant SafeRent, any attorney appearing in this case, and any judge assigned to hear this action.

SAC ¶ 58.

---

[1] Although the SAC originally pled four claims under the FCRA, only three remain pending.   Count III of the SAC alleged that NBD violated 15 U.S.C. § 1681e(e) by failing to identify the end-users of its reports.   However, at oral argument, the Court granted Plaintiffs' motion to voluntarily dismiss Count III with prejudice.   Therefore, Count III is not addressed further herein.

There is also an alternate sub-class alleged in Count I:

> All natural persons residing in the United States (a) who were the subject of a report sold by Defendant SafeRent; (b) where Defendant SafeRent's database indicates that it was furnished for an employment purpose; (c) where Defendant SafeRent's database showed that the report contained at least one adverse criminal "hit" from a jurisdiction form which Defendant SafeRent does not obtain at least four digits of an associated social security number; (d) within the five year period preceding the filing date of this Complaint and during its pendency.

> Excluded from the class definition are any employees, officers, directors of Defendant SafeRent, any attorney appearing in this case, and any judge assigned to hear this Action.

Id. ¶ 59.

Count II, pled against both Defendants, alleges that, should the Court find that the background reports provided by Defendants were not for "employment purposes," then Defendants furnished consumer reports without a permissible purpose in violation of 15 U.S.C. § 1681b. The asserted class consists of:

> All natural persons residing in the United States who were the subject of a report sold by SafeRent to NBD and/or NBD to any third party within the five year period preceding the filing of this action and during its pendency.

> Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

3

SAC ¶ 73.

Count IV is an individual claim, brought by Witt against SafeRent pursuant to 15 U.S.C. § 1681e(b). That section requires that:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b). Witt alleges that SafeRent "failed to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished regarding Plaintiff Witt." SAC ¶ 102. Count IV is not implicated by Defendants' motion.

The SAC alleges that both Defendants committed all of the above violations willfully, and therefore the SAC seeks statutory and punitive damages on all counts. Witt also seeks actual damages on Count IV.

## PROCEDURAL HISTORY

The original Complaint in this action was filed on June 26, 2015. (ECF No. 1). SafeRent filed its first motion to dismiss (ECF No. 9) on August 31, 2015, on the grounds that: (1) the claims of Plaintiffs Tyrone Henderson and James O. Hines, Jr. were time-barred; (2) SafeRent was not subject to personal jurisdiction in Virginia with respect to the claims of Plaintiff

4

John Moore; and (3) upon dismissal of the claims of Henderson, Hines, and Moore, Plaintiff Witt's claims should also be dismissed for improper venue. (ECF No. 10). Less than 24 hours later, in an apparent attempt to circumvent the issues raised in SafeRent's motion to dismiss, Plaintiffs filed an Amended Complaint, which was largely identical to the original Complaint except for the addition of brief and vague allegations pertaining to fourteen newly proposed Named Plaintiffs. (ECF No. 12).

Both SafeRent and NBD again moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF Nos. 26, 37). On January 12, 2016, the Court granted Defendants' motions in part and dismissed the claims of Plaintiffs Henderson, Hines, and Moore with prejudice. (ECF No. 49). The Court also found that the claims of the fourteen so-called "Newly Named Plaintiffs" lacked any factual support, and therefore those plaintiffs had failed to plausibly allege any FCRA violations. Accordingly, the Court dismissed the Newly Named Plaintiffs' claims without prejudice, but with leave to amend. Id. Defendants' motion to dismiss the Amended Complaint was therefore denied as moot as to Witt. Id.

The SAC attempted to cure the defects of the Amended Complaint by adding additional details concerning nine of the fourteen Newly Named Plaintiffs (the other five Newly Named Plaintiffs do not appear in the SAC). Defendants again moved to

dismiss on the ground that the SAC failed to satisfy the requirements of Fed. R. Civ. P. 8(a) and 12(b)(6). The Court granted the motion as to Plaintiffs Robertson, Holmes, and Gonzalez, and denied the motion as to the remaining plaintiffs. (ECF No. 56).

On May 17, 2016, the day after the Supreme Court issued its opinion in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016), Defendants moved the Court to reconsider its Memorandum Opinion ("Mem. Op.") granting in part and denying in part Defendants' second motion to dismiss. (ECF No. 60). The motion is based in part on the Spokeo decision, but also goes well beyond that limited topic. That motion is now ripe for review.

## DISCUSSION

### A. Legal Standard

It is within the discretion of the Court to grant a motion for reconsideration of an interlocutory order. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983); Saint Annes Dev. Co. v. Trabich, 443 Fed. Appx. 829, 832 (4th Cir. 2011). The "heightened standards" applicable to motions for reconsideration of final orders do not apply to reconsideration of interlocutory orders. Id. (quoting Am. Canoe Assoc. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003)). The Court has "plenary power" to afford such relief "as justice requires." Fayetteville Inv. v. Commercial Builders, 936 F.2d

6

1462, 1473 (4th Cir. 1991).

However, a motion to reconsider may not be used to "'reargue the facts and law originally argued in the parties' briefs.'" Projects Mgmt. Co. v. DynCorp Intern., LLC, 17 F. Supp. 3d 539 (E.D. Va. 2014) (quoting United States v. Smithfield Foods, Inc., 969 F. Supp. 975, 977 (E.D. Va. 1997)).

> It is only appropriate for the court to review a previous decision where, for example, it "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare."

Smithfield Foods, 969 F. Supp. at 977 (internal quotations and citations omitted).

## B. Analysis

Defendants offer two grounds that, according to them, necessitate reconsideration. First, Defendants assert that the Court must reconsider its decision because the Memorandum Opinion "reli[ed] on alleged facts that do not appear in the Complaint" in reaching its conclusions. (Defendants' Memorandum in Support of Motion for Reconsideration ("Def. Mem.," ECF No. 61) at 3). Second, Defendants contend that Plaintiffs have failed to adequately allege that they have suffered any concrete

and particularized injury-in-fact and therefore lack standing based on the Supreme Court's May 16, 2016 decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016).[2] Id. at 5-14. Although typically standing must be addressed before other issues because it implicates the Court's subject matter jurisdiction, here, the resolution of Defendants' first contention informs the resolution of the second; therefore, Defendants' arguments are addressed in order.

### 1. The Memorandum Opinion did not Rely on Facts Outside the Record.

Defendants take issue with the statement in the Memorandum Opinion that public records sold by SafeRent and NBD "'often contain only limited identifying information'" and "'sometimes do not contain identifying data such as middle names or addresses[.]'" (Def. Mem. at 3) (citing Mem. Op. at 7). Defendants argue that those facts were not in the SAC and that they improperly "guided the Court's analysis of whether Plaintiffs pleaded that the records returned by Defendants were

---

[2] Defendants also argue, albeit implicitly, that the Court was simply incorrect in holding that the claims of some of the Newly Named Plaintiffs satisfied Fed. R. Civ. P. 12(b)(6) and 8(a). The Court has already explicitly and thoroughly rejected that argument; therefore, it is not a proper ground for reconsideration. Smithfield Foods, 969 F. Supp. at 977. However, to the extent that the standing inquiry necessarily turns on the sufficiency of Plaintiffs' factual allegations, that argument is addressed in more detail below.

incomplete[.]"  Id.  That argument mischaracterizes both the SAC
and the Memorandum Opinion.

Plaintiffs alleged that SafeRent's data is incomplete
because SafeRent "purchased or obtained criminal records in bulk
and thus without the identifying information, such as social
security numbers."  SAC ¶ 44 (emphasis added).  The use of the
phrase "such as" demonstrates that social security numbers are
merely one example of the sort of identifying information that
is alleged to be missing from SafeRent's records.  Plaintiffs do
not specify what other identifying information SafeRent's
records lack, but the allegation that SafeRent's records did not
contain "identifying information" is clearly present in the SAC.
The paraphrasing of those allegations in the Memorandum Opinion
merely recognizes this reality.

Moreover, to the extent that Defendants take issue with the
characterization of "middle names and addresses" in the
Memorandum Opinion as examples of "identifying information"
(which Plaintiffs have broadly and plainly alleged is absent in
all of SafeRent's records), that detail did not "guide the
Court's analysis of whether Plaintiffs pleaded that the records
returned by Defendants were incomplete[.]"  (Def. Mem. at 3).
The offending sentence was located in the section of the
Memorandum Opinion entitled "Factual Background," and was just
that--background.  In analyzing whether Plaintiffs had proffered

9

sufficient allegations of incompleteness to satisfy Fed. R. Civ. P. 12(b)(6), the Memorandum Opinion, directly quoting the SAC, held that the following allegations were adequate:

> Plaintiffs allege that "the public records [SafeRent] furnishes to third parties are summaries, indexes, or partial records that it obtains from its courthouse sources. SafeRent never furnishes the complete and up-to-date public record." Id. ¶ 43. Specifically, the Named Plaintiffs allege that SafeRent's data is incomplete because it "purchased or obtained criminal records in bulk and thus without the identifying information, such as social security numbers." Id. ¶ 44.

(Mem. Op. at 16).[3]   Defendants do not contend that those allegations, on which the conclusion regarding incompleteness was explicitly based, were misquoted or not contained in the SAC.   Therefore, Defendants' first argument in support of reconsideration fails.[4]

---

[3] Later in their brief, Defendants argue that the cited paragraph "hinges on" the sentences to which Defendants object. (Def. Mem. at 10). That argument is both irrelevant (because, as set forth above, the Court's inclusion of the disputed sentences was not inappropriate) and it is incorrect (because, as is clear from the plain language of the Memorandum Opinion, that paragraph is based on the allegations cited therein, which are taken verbatim from the SAC).

[4] Ironically, Defendants also simultaneously criticize the Memorandum Opinion for failing to decide issues that clearly are outside the record. Those arguments are also not valid grounds for reconsideration. For example, Defendants contend that the Memorandum Opinion "misapprehended" the SAC because "it failed to address whether the SSNs with respect to any data returned by NBD were available in the public record in the first instance," because "all of the Plaintiffs allegedly reside in Virginia,

### 2. The Standing Issue

Defendants' primary argument in support of reconsideration is that Plaintiffs have failed to allege "concrete and particularized harm, as required by Spokeo[,]" and therefore lack standing to pursue all of their claims. (Def. Mem. at 5). For the following reasons, Defendants' motion will be granted as to the claims of Plaintiffs Allen, Edwards, Hackett, White, Roberts, and Stanley in Count I. Defendants' motion will be denied as to Witt's claim in Count I and will be denied as to all Plaintiffs' claims in Count II.

### a. Legal Framework

Contrary to Defendants' position, Spokeo did not change the basic requirements of standing. Indeed, the Supreme Court reaffirmed that a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547

---

which prohibits the disclosure of SSNs by statute." (Def. Mem. at 12). As noted above, SSNs are merely one example of the broader category of "identifying information" that Plaintiffs allege is lacking from Defendants' records. And, Plaintiffs repeatedly allege that the records maintained and sold by Defendants are "public records." E.g., SAC ¶¶ 2, 10, 14, 18, 39. The nature of the specific items of information available for Defendants to purchase and the legal consequences, if any, of the interaction between Defendants' processes and statutory limitations on dissemination of "public records" depend on facts not currently available in the record and are therefore issues inappropriate for resolution at the pleading stage.

(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).   As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing those elements. Lujan, 504 U.S. at 560.

It is undisputed that the alleged statutory violations are redressable by statutory damages.  Accordingly, the remainder of the discussion on the standing issue is addressed solely to the requirements of injury-in-fact and traceability.

In Spokeo, the Court reiterated that to satisfy the first element of the Lujan test, a plaintiff must establish that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at 560).   To be "particularized," an injury "'must affect the plaintiff in a personal and individual way,'" Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560 n.1), as opposed to an "undifferentiated, generalized grievance" that all citizens share.  Lance v. Coffman, 549 U.S. 437, 442 (2007). However, "the fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance," as long as "each individual suffers a particularized harm."  Spokeo, 136 S. Ct. at 1548 n.7.

A "concrete" injury, on the other hand, is one that is "'real,' and not 'abstract.'" Spokeo, 136 S. Ct. at 1548 (citing Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967)). Tangible injuries plainly satisfy this requirement, but intangible injuries may also "nevertheless be concrete." Id. at 1549. In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Spokeo Court offered two important considerations: (1) "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts[;]" and (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" Id. (quoting Lujan, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Supreme Court then elaborated on the connection between statutory standing created by Congress and concrete injury. To begin, the Court explained that "Article III standing requires a concrete injury even in the context of a statutory violation," and, therefore, that "[the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. (citing Summers v. Earth Island Institute, 555 U.S.

13

488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation...is insufficient to create Article III standing")).   Attempting to clarify that distinction, the Court then noted that, although one of the FCRA's purposes is to protect against inaccurate credit reporting, "not all inaccuracies cause harm or present any risk of harm":   for example, "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."   Id. at 1550.

At the same time, the Court observed that, in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient...[and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. at 1549 (citing Federal Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998); Public Citizen v. Department of Justice, 491 U.S. 440, 449 (1989)) (emphasis in original).   As one commentator has put it:

> In these situations, legal rights reflect social judgments about where harm has and has not occurred.   Often, these kinds of injuries exist where we think the harm is in the act itself.   The public disclosure of private information or defamatory falsehoods does not need downstream consequences to be hurtful; neither does differential treatment on the basis of race.   Procedural wrongs are an oft-seen category where the distinction between the legal violation and the injury

14

> may be so thin as to be essentially
> nonexistent. Proving the injury in many of
> these cases just entails proving the
> violation itself—that certain words were
> spoken, certain information disclosed, or
> certain procedures flouted. As a result,
> requiring some sort of additional indicia of
> harm beyond the violation itself ignores the
> nature of the injury and the reason for the
> remedy.

Daniel Townsend, Who Should Define Injuries For Article III Standing?, 68 STAN L. REV. ONLINE 76, 80-81 (2015).

In sum, then, the proposition that "[t]he...injury required by Article III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing'" survives Spokeo subject to qualification, depending on the facts of each case and the considerations articulated above, but nevertheless intact. Warth v. Seldin, 422 U.S. 490, 500 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973)). These fundamental principles guide the analysis of the standing questions raised in Defendants' motion. With those principles in mind, it is necessary, as Spokeo instructs, to look to the common law and to the judgment of Congress, as reflected in the FCRA, to determine whether the violations of that statute alleged by Plaintiffs constitute concrete and particularized injuries that satisfy the case or controversy requirement.

### b. Count I

**i.   Section 1681k(a)**

Section 1681k of the FCRA provides that:

> A consumer reporting agency which furnishes
> a consumer report for employment purposes
> and which for that purpose compiles and
> reports items of information on consumers
> which are matters of public record and are
> likely to have an adverse effect upon a
> consumer's ability to obtain employment
> shall—
>
> **(1)** at the time such public record
> information is reported to the user of such
> consumer report, notify the consumer of the
> fact that public record information is being
> reported by the consumer reporting agency,
> together with the name and address of the
> person to whom such information is being
> reported; or
> **(2)** maintain strict procedures designed to
> insure that whenever public record
> information which is likely to have an
> adverse effect on a consumer's ability to
> obtain employment is reported it is complete
> and up to date. For purposes of this
> paragraph, items of public record relating
> to arrests, indictments, convictions, suits,
> tax liens, and outstanding judgments shall
> be considered up to date if the current
> public record status of the item at the time
> of the report is reported.

15 U.S.C. § 1681k(a). That section arose out of Congress'

concern that:

> Most credit bureaus systematically compile
> public record information such as records of
> suits, tax liens, arrests, indictments,
> convictions, bankruptcies, judgments and the
> like. This information is then included on
> a person's report when he applies for
> credit, or in some cases when he applies for

16

> employment. <u>Unfortunately, the information</u>
> <u>cannot always be kept up to date because it</u>
> <u>is costly or because the correct information</u>
> <u>is simply not available</u>...Because public
> record information is reported to employers
> as well as creditors, a consumer's future
> employment career could be jeopardized
> because of an incomplete credit report.

S. Rep. No. 91-517 at 4 (emphasis added).

Therefore, Congress enacted § 1681k to prevent CRAs from reporting "adverse items of public record information for employment purposes unless they maintain strict procedures to keep the information [complete and] up to date. <u>If this cannot be done</u>, the consumer must be notified that the adverse information is being reported and to whom at the time the report is made." <u>Id.</u> at 7 (emphasis added).

The language and the alternative structure of § 1681k make clear that the ultimate harm that Congress sought to prevent was damage to consumers' employment prospects caused by reporting of incomplete or out-of-date public records. To further that objective, Congress offered CRAs two options: they could either (1) "maintain strict procedures" to minimize the reporting of incomplete or out-of-date public records; <u>or</u> (2) alert the consumer to the existence of the report so that the consumer himself could remedy any mistakes in the report before adverse employment action occurred.

17

Thus, § 1681k(a) creates two substantive rights. First, § 1681k(a) conferred on consumers the right that, when adverse public record information is disseminated that is likely to adversely affect their employment prospects, the information must be complete and up-to-date. This right, however, is not absolute; the requirement of "strict procedures" serves as a limit on liability that might otherwise attach for incomplete or out-of-date reports. See, e.g., Washington v. CSC Credit Servs., Inc., 199 F.3d 263, 267 (5th Cir. 2000); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994). Second, the statute creates a contingent right to information: if the CRA fails to comply with § 1681k(a)(2), then the consumer is statutorily entitled to receive notice of the furnishing of the report.

Both the right to complete and up-to-date reports and the right to notice are substantive. Neither is merely procedural nor technical. Moreover, Congress permitted consumers to sue to redress a breach of the substantive rights set forth in the foregoing subsection and, if successful, to be awarded actual, statutory, and punitive damages, as applicable. 15 U.S.C. § 1681n. In so doing, as set forth in further detail below, Congress defined injuries and articulated chains of causation that give rise to a case or controversy.

### iii. Count I:  Plaintiff Witt

#### a. Concreteness

Having identified the interests that § 1681k seeks to protect and the mechanism by which it seeks to do so, it becomes clear that Witt has suffered a concrete informational injury: that is, Witt has alleged that she was deprived of a disclosure to which she was statutorily entitled.  Importantly, the Supreme Court in Spokeo confirmed its previous holdings in Federal Election Comm'n v. Akins[5] and Public Citizen v. Department of Justice,[6] both of which teach that Congress may create a legally cognizable right to specific information, the deprivation of which constitutes a concrete injury sufficient to satisfy Article III.  136 S. Ct. at 1549-50.  In those cases, the Supreme Court found standing where the plaintiffs sought to obtain, and were denied, information that was subject to public disclosure under the Federal Election Campaign Act and the Federal Advisory Committee Act, respectively.

Similarly, in Havens Realty Corp. v. Coleman, the Supreme Court held that the plaintiffs (individuals "who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices,") had suffered a concrete injury under the

---

[5] 524 U.S. 11, 20-25 (1998).

[6] 491 U.S. 440, 449 (1989).

19

Fair Housing Act when they received untruthful housing information, even though they did not seek to use the information for any purpose other than litigation. 455 U.S. 363, 373 (1982). The Supreme Court held that, regardless of the plaintiffs' motives, Congress had created "an enforceable right to truthful information concerning the availability of housing," and that a "tester who has been the object of a misrepresentation made unlawful under [the Fair Housing Act] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." Id.

In the wake of Havens, Akins, and Public Citizen, it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which constitutes a concrete injury. That is exactly the case here. Witt has alleged that SafeRent did not furnish complete and up-to-date public records because its records lacked "identifying information, such as social security numbers." SAC ¶ 44. And, more specifically, Witt has alleged that the report furnished by SafeRent contained several criminal conviction public records that did not belong to Witt. SAC ¶¶ 29-30. At this stage, those allegations are sufficient to support a plausible inference that the report furnished in response to Witt's employer's inquiry was not "complete and up-to-date." See, e.g., Haley v. TalentWise,

20

Inc., 9 F. Supp. 3d 1188, 1194 (W.D. Wash. Apr. 2, 2014); Moore
v. First Advantage Screening Corp., 2012 WL 4461505, at *2-*3
(N.D. Ohio Sept. 25, 2012).   Moreover, Witt alleged that
SafeRent did not "maintain strict procedures" to ensure the
completeness and timeliness of its public records because
SafeRent sells only "summaries, indexes, or partial records."
Id.   Reasonably construed, the SAC alleges that, when complete
records exist, the purveying of summaries and partial versions
thereof and indices thereto manifests a lack of strict
procedures to assure that the purveyed public record information
is complete and up-to-date.   That is sufficient to allege a
violation of the strict procedures clause of § 1681k(a).

     Based on the foregoing allegations, Witt has alleged that
SafeRent did not comply with 15 U.S.C. § 1681k(a)(2) when it
furnished her consumer report, thereby triggering the right to
notice under § 1681k(a)(1).   And, Witt has alleged that she did
not receive that notice.   SAC ¶ 41.   Where, as here, a consumer
alleges a deprivation of information or notice to which she was
statutorily entitled, the consumer has alleged a concrete
informational injury.

### b. Particularization

     Defendants do not seriously contest that Witt's allegations
are sufficiently particularized to confer standing.   Nor could
they, because Witt has specifically alleged that SafeRent and

NBD furnished an incomplete and misleading consumer report about her that contained incomplete criminal record information that was materially adverse to her employment prospects.  Rather, Defendants' arguments concerning particularization are exclusively addressed to the Newly Named Plaintiffs.  Therefore, those arguments are addressed in the following section.

> iv. **Count I:  Plaintiffs Robertson, Allen, Gonzalez, Edwards, Hackett, White, Roberts, Stanley, and Holmes**

Defendants argue that Plaintiffs have not alleged "concrete" injuries in Count I because "the Complaint fails to allege any facts demonstrating that the information NBD allegedly supplied about [the "Newly Named Plaintiffs," i.e., all plaintiffs except Witt] was incomplete, outdated, or inaccurate[.]"  (Def. Mem. at 8).  Nor, according to Defendants, do the Newly Named Plaintiffs allege "how any incomplete data returned by Defendants' [sic] affected their employment prospects in any way."  Defendants also contend that "th[e] analysis [in Spokeo], which is directly on point with this case and the claim in Count I...indicated that a technical violation—and even a related inaccuracy—is not necessarily enough to create particularized, concrete harm."

Second, Defendants argue that the Newly Named Plaintiffs have failed to plead a "particularized" injury in Count I because Spokeo prevents Plaintiffs from pleading allegations

22

that are common to all plaintiffs in a single allegation.  (Def. Mem. at 11).  Specifically, Defendants contend that Plaintiffs' allegations as to "incompleteness" are not sufficiently particularized because Plaintiffs merely allege that all of SafeRent's records were incomplete, and do not (with the exception of Witt) specifically allege what records Defendants returned as to them were incomplete, out-of-date, or inaccurate.

Plaintiffs respond that Spokeo did not alter the constitutional requirements for standing.  In any event, Plaintiffs argue that every Named Plaintiff has pled two concrete injuries.  First, Plaintiffs allege that "defendants' failure to comply with section 1681k(a) posed a 'material risk of harm' to consumers that expressly motivated Congress to enact the FCRA—namely, the risk that inaccuracies in the information that the defendants reported to other users would adversely affect consumers' employment prospects."  (Plaintiffs' Memorandum in Opposition to Defendants' Motion for Reconsideration ("Pl. Mem. in Opp.," ECF No. 69) at 15). Second, Plaintiffs assert that Defendants' failure to provide the required notice pursuant to § 1681k(a)(1) "caused the plaintiffs to suffer a separate, informational injury."  Id.

Notwithstanding the explicit warnings in the Memorandum Order granting Defendants' first motion to dismiss (ECF No. 49), Plaintiffs Allen, Edwards, Hackett, White, Roberts, and Stanley

23

("the Newly Named Plaintiffs") have failed to demonstrate that their claims in Count I satisfy either the injury-in-fact or traceability elements of standing. More specifically, because the Newly Named Plaintiffs have failed to plead specific facts from which the Court could infer that SafeRent furnished incomplete reports about them, they have failed to plausibly allege that (1) they suffered any particularized injury, and (2) any damage to their employment prospects was traceable to a statutory violation by SafeRent.

As SafeRent points out, the Newly Named Plaintiffs do not "identify the substance of NBD's[7] reporting and/or the type of record(s) that were allegedly returned," nor do they "allege any facts demonstrating that the information NBD allegedly supplied about the Newly Named Plaintiffs was incomplete, outdated, or inaccurate." (Def. Mem. at 8). Rather, the Newly Named Plaintiffs rely on general allegations that: (1) they were denied employment because of information believed to have been furnished by Defendants; and (2) "Defendant SafeRent never furnishes the complete and up-to-date public record," because it furnishes only "summaries, indexes, or partial records[.]"

---

[7] Although Count I is pled only against SafeRent, Defendants often refer to NBD's actions when making their arguments pertaining to Count I. However, because it appears that NBD simply acts as a conduit between SafeRent and the reseller CRAs, the Court treats Defendants' references to NBD as applying equally to SafeRent unless specifically indicated otherwise.

### a. Particularization

The Newly Named Plaintiffs have failed to allege that they have suffered a particularized injury to their statutorily protected interests because they have failed to describe with any specificity how any of their reports were incomplete or out-of-date, or how all reports, including their own, were incomplete or out-of-date. Without any allegation that their reports were incomplete or out-of-date, the Newly Named Plaintiffs cannot show that they were entitled to notice pursuant to § 1681k(a)(1). Therefore, the Newly Named Plaintiffs have not demonstrated a particularized informational injury. Nor have they adequately pled that any illegal conduct by SafeRent led to their denial of employment or otherwise affected them in such a way as to charge that SafeRent's statutory violation "affected [the Newly Named Plaintiffs] in a personal and individual way." Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560 n.1). Simply put, in the absence of any specific allegations concerning the incompleteness of the Newly Named Plaintiffs' reports, the Newly Named Plaintiffs have not alleged that SafeRent violated the statute as to them. That is the very definition of particularization.

Taken to its logical conclusion, under the Newly Named Plaintiffs' theory, any consumer who was the subject of any report sold by SafeRent could bring a claim under § 1681k(a)(1)

without alleging any specific deficiencies in his or her report.[8] That is particularly apparent in light of the stark contrast between the Newly Named Plaintiffs' threadbare allegations that they were denied employment "because of the information that NBD supplied about [them]," see SAC ¶¶ 23-27, and Witt's specific factual allegations concerning the circumstances of her application for employment and the errors in her report further demonstrates that the Newly Named Plaintiffs lack any information about the contents of their own reports.[9]

Allowing the action to proceed under the foregoing circumstances would undermine the purpose of the standing

---

[8] The Court does not mean to imply that a plaintiff must allege what amounts to actual damages in order to survive a motion to dismiss a claim under § 1681k(a). Nor does it mean to imply that an FCRA plaintiff could not satisfy the particularization requirement by alleging specific facts from which the Court could infer that all of SafeRent's reports were incomplete or outdated in the same way. The point here is that the plaintiffs would still have to allege that their reports suffered from that defect. Plaintiffs' allegations that SafeRent "is not the type of entity that can avail itself of the compliance option set forth at 15 U.S.C. § 1681k(a)(2)," that "[a] § 1681k(a)(2) option is not available to SafeRent," and that "SafeRent never furnishes the complete and up-to-date public record" are merely legal conclusions that (1) may not be credited by the Court, and (2) do not provide the necessary individualization to demonstrate particularized injury.

[9] In fact, given the hasty addition of the Newly Named Plaintiffs to this action and the lack of any allegation in either Complaint in which they appear that any of the Newly Named Plaintiffs' reports contained any errors or any explanation of how the reports sold by SafeRent led to the denial of the Newly Named Plaintiffs' employment, it appears that these plaintiffs in particular were added merely because they reside in the Richmond Division of the Eastern District of Virginia.

requirement, which "assures an actual factual setting in which the litigant asserts a claim of injury in fact, [so that] a court may decide the case with some confidence that its decision will not pave the way for lawsuits which have some, but not all, of the facts actually decided by the court." Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982). Thus, the Newly Named Plaintiffs have failed to satisfy the "particularization" aspect of injury-in-fact.

When pressed at oral argument about the Newly Named Plaintiffs' failure to provide particularized allegations of incompleteness, Plaintiffs argued that it is only possible to plead generalized allegations of incompleteness against SafeRent because SafeRent purposely conceals its role in the background check process by causing the data that it sells to pass through multiple resellers before reaching its ultimate destination, and therefore consumers never have an opportunity to view or receive the reports that SafeRent provides. Plaintiffs claim that it is impossible for them to allege incompleteness with any particularity, and so any such requirement would allow Defendants to escape their obligations under the FCRA.

It is true that sometimes pleading requirements must be relaxed to allow a plaintiff to discover facts that are exclusively within the defendant's control. See, e.g., Moore,

27

2012 WL 4461505, at *3 (noting that a defendant's intent "may not be capable of any more definite factual assertion prior to discovery," and therefore finding generalized allegations of willfulness sufficient). However, here, that is simply not the case. Witt's allegations clearly reveal that she has obtained a copy of the report that Defendants furnished about her. Similarly, Tyrone Henderson and James Hines, who are currently pursuing a § 1681k claim in a related action against NBD and were originally named as plaintiffs in this case, but were dismissed on statute of limitations grounds, were able to allege specific errors in their reports that gave rise to an inference of incompleteness. Moreover, Plaintiffs are not without a remedy; the FCRA provides that a consumer reporting agency must "clearly and accurately" disclose "[a]ll information in the consumer's file" upon a consumer's request, subject to certain limitations.[10] 15 U.S.C. § 1681g(a)(1). Thus, even if SafeRent or NBD were to refuse to provide the reports in response to Plaintiffs' request, Plaintiffs have the option to (1) sue Defendants for a separate violation of the FCRA; or (2) obtain the same information from the reseller CRAs that relied on Defendants' reports in creating the consumer reports that were

---

[10] In any event, even though it may be difficult--though clearly not impossible--for Plaintiffs to obtain their consumer reports under the circumstances presented here, that fact does not excuse them from the pleading requirements of the Federal Rules and the requirements of Spokeo.

ultimately furnished to the Newly Named Plaintiffs' putative employers. The Newly Named Plaintiffs do not appear to have pursued any of those options, instead choosing to proceed based on guesswork alone with the hopes of securing venue in the Richmond Division and unearthing the basic facts of their case in discovery. Neither the Federal Rules of Civil Procedure nor the Supreme Court's standing jurisprudence permits such an approach. Accordingly, Plaintiffs' argument is not persuasive.

For the foregoing reasons, the Newly Named Plaintiffs have failed to allege particularized injury-in-fact sufficient to confer standing.

### b. Traceability

The Newly Named Plaintiffs' failure to plead particularized injury is closely and inextricably related to their failure to plead that they have suffered an injury traceable to wrongdoing by SafeRent. The nexus between those shortcomings is most easily explained through the following hypothetical. If SafeRent sold a complete and up-to-date report showing that a person had a conviction for a violent felony, that person could be disqualified from consideration for employment on the basis of SafeRent's report. In that scenario, the person is not entitled to notice under § 1681k(a)(1) because the report was complete and up-to-date; therefore, the consumer has not suffered the harm that the statute was designed to prevent, and

there is no informational injury.    Thus, the damage to that consumer's employment prospects was not caused by any improper conduct on the part of SafeRent.

Because the Newly Named Plaintiffs have failed to provide any facts regarding whether, or how, their reports were complete or up-to-date, it is impossible to tell whether they fit the example or whether what Saferent did caused them the informational and notice injury on which they rely.   Indeed, it appears that even the Newly Named Plaintiffs themselves do not know.    More precisely, without some reasonably specific allegations of incompleteness, the Newly Named Plaintiffs have not plausibly pled that they were entitled to notice under § 1681k(a)(1), and thus have not plausibly pled that they suffered informational injury.   And, because no detail is provided concerning whether or how the criminal record information that caused the Newly Named Plaintiffs to be denied employment was incomplete or out-of-date, the Court cannot infer that the damage to the Newly Named Plaintiffs' employment prospects was causally related to any statutory violation by SafeRent. Therefore, the Newly Named Plaintiffs have not alleged that they suffered any harm that actually resulted from a violation of § 1681k(a).

For the foregoing reasons, the Newly Named Plaintiffs have failed to demonstrate that they have standing to pursue their

30

claims in Count I.   Accordingly, the claims of Plaintiffs Allen, Edwards, Hackett, White, Roberts and Stanley in Count I will be dismissed.

### c. Count II

In Count II of the SAC, brought against both Defendants and pled in the alternative to Count I, Plaintiffs allege that, if Defendants' background reports were not sold for "employment purposes" (as NBD has previously represented to be the case in Henderson v. Nat'l Background Data, LLC, 3:12-cv-97), then Defendants furnished Plaintiffs' consumer reports without a "permissible purpose" in violation of 15 U.S.C. § 1681b(a). Defendants assert that Plaintiffs lack standing to pursue Count II under Spokeo because "Plaintiffs do not allege any concrete or particularized harm stemming from the fact that NBD/SafeRent were supposedly involved in a return of data to a background screening company that itself indisputably had an 'employment purpose' to obtain that data."[11]   (Def. Mem. at 13).

---

[11] As noted above, Count II is pled in the alternative to Count I, which alleges that Defendants furnished Plaintiffs' consumer reports for "employment purposes."   Interestingly, so eager are Defendants to minimize the injury alleged in Count II that they have all but admitted outright that the reports were furnished for employment purposes.   See, e.g., Def. Mem. at 12 (noting that "the alleged return of records for each Plaintiff...was done in connection with an employment background screening, which is allowed under the FCRA.   See 15 U.S.C. § 1681b."). However, Defendants declined to concede that point at oral argument.   And, because the resolution of that issue is important to the future course of this case and because the

31

Additionally, according to Defendants, their transactions were "one or two steps removed from the potential transfer of information to any employer, which would be the only time that Plaintiffs' interests could even possibly be affected or that any concrete injury could occur." Id.

Plaintiffs respond that "defendants' alleged violation of section 1681b results in a classic form of cognizable harm: invasion of privacy. It is common sense that a party's sale of deeply personal information about an individual to a user for a statutorily impermissible use harms that individual's privacy interests." (Pl. Mem. in Opp. at 24). Plaintiffs argue that the confidentiality of consumers' personal information was one of Congress' core concerns when it enacted the FCRA, and one of the ways that Congress sought to achieve that objective was by limiting the circumstances under which consumer reports could be disseminated. Id. Moreover, Plaintiffs point out, invasion of

---

question whether the reports were for "employment purposes" is ultimately a factual issue, the Court has directed the parties to propose a plan for expedited discovery to resolve the questions of whether Defendants provided reports for "employment purposes" and, relatedly, which of Plaintiffs' alternative claims may proceed.

The Court recognizes the right to plead alternative legal theories, but is aware of no authority that allows the pleading of alternative facts where one set of which is entirely opposite the other. Thus, the Court apprehends that Defendants' divergent views ("for employment purposes" or "not for employment purposes") is a violation of the rule that one may not approbate and reprobate at the same time. The expedited discovery will flush out the truth.

privacy, though often unaccompanied by actual damages, has long been cognizable at common law. Id. at 24-25. Plaintiffs have the better of that argument.

One of the problems that Congress recognized and sought to remedy when it enacted the FCRA was that "information in a person's credit file [was] not always kept strictly confidential." S. Rep. No. 91-517, 91st Cong., 1st Sess. 4. Accordingly, one of Congress' enumerated purposes in enacting the FCRA was to protect the confidentiality of consumers' personal information, thereby protecting the consumers' right to privacy. 15 U.S.C. § 1681; see also Trans Union Corp. v. FTC, 81 F.3d 228, 234 (D.D.C. 1996) ("Along with the accuracy of collected information, a major purpose of the Act is the privacy of a consumer's credit-related data."). "One of the means by which Congress effectuated this purpose was prohibiting the release of consumer…reports unless the release occurs for one of the permissible purposes set forth in 15 U.S.C. § 1681b(a)." Cole v. United States Capital, 389 F.3d 719, 725 (7th Cir. 2004); see also Harris v. Database Mgmt. & Marketing, Inc., 609 F. Supp. 2d 509, 513 (D. Md. 2009) ("The FCRA achieves this design [of preserving consumer privacy] by imposing restrictions on access to individuals' credit information."). Thus, § 1681b(a) creates a legally protected privacy interest in limiting dissemination of consumers' reports to circumstances

falling within the "permissible purposes" enumerated in that section.

Therefore, by alleging that, if Defendants' records were not sold for an employment purpose, Defendants lacked any statutorily permissible purpose, Plaintiffs have alleged a violation of their statutorily created right to privacy and confidentiality of their personal information. The FCRA provides that an employer may not obtain an applicant's consumer report, thereby invading his or her statutory right of privacy, unless the employer first obtains the consumer's knowing and voluntary written consent to secure that information, as required by § 1681b(b)(2)(A). The common law has long recognized a right to personal privacy, and "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." United States Dept. of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 763 (1989) (defining "private" as "intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public"). Moreover, as the Supreme Court has observed, the right to privacy in compilations of personal information is particularly powerful because the "power of compilations to affect personal privacy that outstrips the combined power of the bits of information contained within." Id. at 765.

34

Accordingly, it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue. See generally Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 HARV. L. REV. 193 (1890).

Similarly, it is well-settled that Congress may create a statutory right to privacy in certain information that strengthens or replaces the common law, and citizens whose statutory right to informational privacy has been invaded may bring suit under the statute to vindicate that right. See, e.g., 18 U.S.C. § 2707(c) (authorizing statutory damages for violations of the Electronic Communications Privacy Act of 1986 ("ECPA")); 12 U.S.C. § 3417 (statutory damages available under the Right to Financial Privacy Act ("RFPA")); 18 U.S.C. § 2710(c)(1) (establishing a private right of action under the Video Privacy Protection Act ("VPPA")). Furthermore, where a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of actual damages. See, e.g., In re Nickelodeon Consumer Privacy Litig., -- F.3d --, 2016 WL 3513782, at *7 (3d Cir. June 27, 2016) (noting that "Congress has long provided plaintiffs with the right to seek redress for unauthorized

35

disclosures of information that, in Congress's judgment, ought to remain private") (footnote omitted); Sterk v. Redbox Automated Retail, LLC, 770 F.3d 618, 623 (7th Cir. 2014) (holding that the plaintiffs suffered a concrete injury-in-fact when defendant sold plaintiffs' information to third parties in violation of the VPPA); Coelter v. Hearst Commc'ns, Inc., -- F. Supp. 3d --, 2016 WL 3369541, at *3 (S.D.N.Y. June 17, 2016) (same); Johnson v. Navient Sols., Inc., -- F. Supp. 3d --, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015) (finding standing based on a violation of the plaintiff's statutory right to privacy created by the Telephone Consumer Protection Act ("TCPA")); United States v. Koranki, 2015 WL 4394947, at *1 (W.D. Okla. July 16, 2015) (finding that the government's failure to follow necessary procedures before procuring bank customer's financial records invaded the customer's statutory right to privacy under the RFPA, which conferred standing); Cousineau v. Microsoft Corp., 992 F. Supp. 2d 1116, 1122-23 (W.D. Wash. 2012) (finding an invasion of privacy sufficient to constitute injury-in-fact where defendant collected smartphone user's location data without her consent).

Here, every plaintiff, including each of the Newly Named Plaintiffs, has plainly alleged that Defendants sold a background check about him or her in connection with an application for employment. SAC ¶¶ 21, 23-27, 29-30. And, the

plaintiffs have alleged that, should the Court find that those reports were not for "employment purposes," then Defendants lacked a permissible purpose for either the sale or use of the reports. Id. ¶ 46. Although the fact that Plaintiffs' reports were procured in connection with applications for employment might appear fatal to their claim that Defendants' reports were furnished without a permissible purpose (because "employment purposes" are a "permissible purpose" as defined in 15 U.S.C. § 1681b), Count II has arisen because of Defendants' strenuous assertions, both in this litigation and in the related case of Henderson v. CoreLogic Nat'l Background Data LLC, that the reports that they sell are not for "employment purposes," and that, because Defendants are "data wholesalers," they do not need to show any "permissible purpose" to furnish information to other CRAs. See SAC ¶ 47 (citing Henderson, Case No. 3:12-cv-97). Defendants insist that that is true for all of the reports that they sold regarding the Named Plaintiffs. Therefore, at this stage, every named Plaintiff has alleged the same concrete and particularized harm that is a direct result of Defendants' wrongful conduct. That allegedly impermissible disclosure constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing.

Defendants cite four cases from district courts outside this Circuit for the proposition that an invasion of privacy is

not necessarily a legally cognizable harm. (Def. Mem. at 12-
13). To the extent that those cases hold that an invasion of
privacy caused by unlawful dissemination of one's confidential
information is not a concrete and particularized injury, the
Court declines to follow that holding for the reasons set forth
above and in Thomas v. FTS USA LLC, 2016 WL 3653878 (E.D. Va.
June 30, 2016).

Defendants next argue that Plaintiffs have failed to allege
an invasion of privacy in Count II because "that alleged harm is
not pled. The word 'privacy' does not even appear in the
Complaint." (Def. Reply at 13). That argument misses the
point. Plaintiffs need not explicitly plead a claim for
"invasion of privacy" to show that their statutory right to
privacy was invaded. Indeed, to do so would have been futile
because Congress, in enacting the FCRA, explicitly preempted
suits for invasion of privacy "except as to false information
furnished with malice or willful intent to injure [the]
consumer." 15 U.S.C. § 1681h(e); see also Myers v. Bennett Law
Offices, 238 F.3d 1068, 1074 (9th Cir. 2001) ("When a consumer
brings an action for violation of the disclosure provisions of
the FCRA, the Act's purpose of protecting consumer
confidentiality is implicated. In that respect, such cases are
akin to invasion of privacy cases under state law--cases where
the plaintiff alleges that the defendant unlawfully invaded the

plaintiff's privacy by obtaining information deemed confidential.") (collecting cases). An invasion of privacy is inherent in Plaintiffs' claim that their confidential information was improperly disseminated.

Defendants also appear to argue that Plaintiffs did not adequately allege an injury in Count II because FTC regulations and guidance permit the transfer of data between consumer reporting agencies, and therefore, Defendants' conduct was not unlawful. That argument concerns the legal merits of Plaintiffs' claim, not the constitutional adequacy of the injury that has been alleged, and has no connection to the Supreme Court's decision in Spokeo. Accordingly, that argument is not a proper ground for reconsideration, and the Court declines to consider it further.

Finally, Defendants claim that "Plaintiffs' privacy could not have been 'invaded' when they consented to the background screening process." (Def. Reply at 13). Defendants also made much of this point at oral argument, arguing that, because the FCRA requires employers to obtain consumers' consent before procuring their consumer reports for employment purposes, Plaintiffs must have given such consent and therefore had no expectation of privacy in the information that Defendants furnished about them. Here, again, Defendants ask the Court to reach far beyond the record. Contrary to Defendants'

implication, the fact that employers are required by statute to obtain current or potential employees' consent before procuring their consumer reports by no means gives rise to the inference that such consent was actually obtained, as evidenced by the plethora of lawsuits arising out of employers' failure to comply with that particular statutory requirement. See, e.g., Thomas v. FTS USA, LLC, Case No. 3:13-cv-825. Thus, the questions whether such consent was obtained and, if so, whether and to what extent it absolves Defendants of liability cannot be determined at this stage of litigation. Therefore, that argument is similarly not a proper ground for reconsideration.

Thus, for the reasons set forth above, the motion to reconsider the Memorandum Opinion denying Defendants' motion to dismiss Count II will be denied.

## CONCLUSION

For the foregoing reasons, DEFENDANTS' MOTION FOR RECONSIDERATION (ECF No. 60) will be granted in part and denied in part. Defendants' motion will be granted as to the claims of Plaintiffs Allen, Edwards, Hackett, White, Roberts, and Stanley in Count I, and those claims will be dismissed with prejudice. Defendants' motion will be denied as to Witt's claim in Count I. Defendants' motion will be denied as to Count II. Count III has been dismissed with prejudice upon Plaintiffs' oral motion made

in open court, and therefore Defendants' motion will be denied as moot as to Count III.

It is so ORDERED.

_____ /s/      _REP_
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August _18_, 2016