**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| CAROLYN WITT, *et al.*, *on behalf of themselves and all others similarly situated,* | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No: 3:15-cv-386 |
| CORELOGIC SAFERENT, LLC, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**TO OVERRULE OBJECTIONS AND COMPEL DISCOVERY RESPONSES**

The Plaintiffs, by counsel, respectfully submit the following memorandum of law in support of their Motion to Overrule Objections and Compel Discovery Responses.

Despite its earlier filing, the Parties were not joined in the case and discovery did not open until June 30, 2016. Even then, with Defendants' prosecution of a series of dispositive motions, Defendants rebuffed both discovery and any compromise through Rule 37 conferral until the Court's most recent October 25, 2016 Order. (Dkt. No. 113).

While Plaintiffs have been diligently litigating this case, Defendants have improperly hindered that effort at every opportunity. This Court often uses the *Carolina four-corners defense* analogy, and that is exactly what Plaintiffs have subjected to in this case. Defendants objected to nearly every single interrogatory, document request, and request for admission. When Plaintiffs initiated efforts to meet and confer, Defendants' counsel could not agree to a single—***not a single***—stipulation, withdrawal of an objection, or to produce any documents during the conference because they purportedly had a client that demanded to approve or reject even the

smallest of proposed compromises.[1] And every defense counter to a compromise proposal, if forthcoming at all, has taken a week or more. But delays and obstruction are often too common in such defense efforts. What makes this matter more discouraging is the discovery of evidence previously withheld or misrepresented.

Through the *Henderson* litigation and until recently in this case, Defendants have represented that they obtained their relevant criminal records from "sources" that they vetted, communicated with, and trusted. Plaintiffs have now discovered that these claims were false. Defendants obtain the largest portion of their records, including nearly all Virginia criminal records, from simple "webscrapes"[2] whereby a computer program reads and makes screen prints of the generic public docket summary sheets available to everyone online. They do not receive records from the Supreme Court of Virginia or Virginia court clerks. Further, in a recent deposition of Defendant NBD's primary declarant-witness in *Henderson*, Plaintiffs learned that the declarations she signed in that case were drafted for her by attorneys and contained substantial testimony about which Ms. Watts now testifies and admits that she did not have specific personal knowledge. She also admitted that the broad generalizations that she made regarding the Defendants' business processes were untrue, and at best, only supportable in some instances. Finally, and most recently, Plaintiffs have learned of significant documents and deposition testimony forced from Defendants in two other mixed-identity cases, *Taylor v. Corelogic Saferent*,

---

[1] This discovery conduct is surprising. Plaintiffs' counsel has litigated many cases against the present defense team. They have a long history of successfully working through disputes and disagreements. For whatever reason here—lack of case control, little or no discretion provided by in-house counsel, or some other reason—both this case and *Henderson* have, unfortunately, been different.

[2] "Web scraping is the process of automatically collecting information from the World Wide Web." https://en.wikipedia.org/wiki/Web_scraping (last visited Oct. 30, 2016).

*LLC*, No. 1:15-cv-01405-TSE-JFA (E.D. Va.) and *Williams v. Corelogic Rental Property Solutions, LLC*, No. 8:16-cv-00058-PX (D. Md.). Defendants have continued their refusal to produce the documents requested in this case despite that they were already ordered and produced in these other cases.

As a result of Defendants' conduct, Plaintiffs are asking this Court:

(1) to overrule Defendants' objections and order full responses to the following Requests for Production of Documents: SafeRent Request Nos. 5, 12, 17, 20, 25, 30, 31, 35, 37, 44, 48-50 and NBD Request Nos. 14, 28, 29, and 35;

(2) to find that Defendants' Objections to Plaintiffs' First and Second Set of Requests for Admission should be overruled and that full responses should be provided;

(3) and (3) that the Plaintiffs' discovery cutoff be extended to 45 days after the date that the Defendants comply with the Court's Order regarding this motion.

**HISTORY**

During the October 26 teleconference with the Court, the Defendants stated that the Plaintiffs had not adequately met and conferred regarding the discovery issues raised during that call. But that is simply untrue. Plaintiffs have participated in numerous meet-and-confer conferences, both over the phone and in person. All of the issues raised in Defendants' countless objections have been specifically discussed. Plaintiffs' counsel has even gone through the arduous and (as it turns out) useless process of reading, summarizing, and offering to narrow every one of the many disputed discovery requests. While there have been multiple other calls between the two sides that are not archived herein, the primary relevant history between the Parties is as follows:

| Date | Event |
|---|---|
| 6/9/16 | Conference Call between Judge Payne and all counsel |

| | |
|---|---|
| | • Regarding documents filed the night before (Joint Response to May 31, 2016 Order (Dkt. No. 68) and Plaintiffs' Opposition to Defendants' Motion for Reconsideration (Dkt. No. 69)) |
| 6/30/16 | Conference Call between CLA and Troutman Sanders<br>• Regarding: 26f Conference and stipulations regarding SSNs |
| 7/8/16 | Plaintiffs serve Witt's First Interrogatories, Requests for Admission, and Requests for Production of Documents to SafeRent |
| 7/8/16 | Plaintiffs serve Witt's First Interrogatories, Requests for Admission, and Requests for Production of Documents to NBD |
| 7/8/16 | Defendants serve their Initial 26a1 Disclosures |
| 7/25/16 | Defendants serve NBD's Objections to Witt's First Interrogatories, Requests for Admission and Requests for Production of Documents |
| 7/25/16 | Defendants serve SafeRent's Objections to Witt's First Interrogatories, Requests for Admission and Requests for Production of Documents |
| 8/9/16 | Defendants serve NBD Responses to Plaintiffs' First Interrogatories, First Requests for Admission and First Requests for Production of Documents |
| 8/9/16 | Defendants serve SafeRent's Responses to Plaintiffs' First Interrogatories, First Requests for Admission and First Production of Documents |
| 8/10/16 | Conference Call between CLA and Troutman Sanders<br>• Regarding: Defendants' Discovery Responses and their reference to documents produced in Henderson v. Corelogic |
| 8/11/16 | Conference Call between CLA and Troutman Sanders |
| 8/26/16 | Defendants serve their First Supplemental 26a1 Disclosures |
| 8/26/16 | Conference Call between Parties |
| 8/26/16 | Defendant's First Production of Documents (NBDWitt_000001-178)<br>• Reseller Agreement between NBD and VanElla, Inc.<br>• User Acknowledgement Form signed by Carol Lichty<br>• *Data Extraction and Data Feed Agreement between Corelogic*[3] *Solutions, LLC and Clerk of Circuit Court for Bay County, Florida*<br>• *Deposit account Information between SafeRent and Collier Clerk of Courts*<br>• *Data Download Subscription Agreement between Corelogic SafeRent and Clerk of Circuit Court for Collier County, Florida*<br>• *Application and Agreement for Subscription to Electronic Records between Corelogic Solutions, LLC and Manatee County Clerk of Circuit Court and Comptroller*<br>• *Miami Dade County Clerk of Courts data Download or Custom Public Access Request from Corelogic SafeRent, LLC*<br>• *Public Records Contract with Lake County, Indiana*<br>• *Public Records Contract with Rapides Parish, Louisiana*<br>• *Public Records Contract with Quad—Tran of Michigan, Inc. for several District Court files* |

[3] Plaintiffs have italicized those documents that are entirely irrelevant to this case.

| | |
|---|---|
| | • *Public Records Contract with State of Minnesota*<br>• *Public Records Contract with Montana*<br>• *Public Records Contract with several courts in Ohio*<br>• *Public Records Contract with the Supreme Court of Pennsylvania*<br>• *List of databases or courts available*<br>• *Public Records Contract with Brazoria County, Texas*<br>• *Public Records Contract with Utah*<br>• *Public Records Contract with Washington State*<br>• Partial Results Returned Database Information for Carolyn Witt |
| 9/7/16 | Conference Call between Parties |
| 9/8/16 | Defendants' Second Production of Documents (NBDWitt_000179-241)<br>• Partial Results Returned Database Information for Willie Stanley<br>• Partial Results Returned Database Information for Carolyn Barnes<br>• Partial Results Returned Database Information for Carolyn Gaudet<br>• Partial Results Returned Database Information for Carolyn Kidd |
| 9/13/16 | Conference Call between Judge Payne and all counsel<br>• Regarding: Pending Motion for a Protective Order |
| 9/18/16 | Meet and Confer Letter from Erausquin to Anthony |
| 9/22/16 | Plaintiffs serve Plaintiffs' Second Requests for Admission to NBD |
| 9/22/16 | Plaintiffs serve Plaintiffs' Second Requests for Admission to SafeRent |
| 9/23/16 | Meet and Confer Meeting (in-person, 8 hours) between CLA and Troutman Sanders regarding discovery disputes |
| 9/27/16 | Plaintiffs serve Plaintiffs' Second Requests for Production of Documents to SafeRent |
| 10/4/16 | Defendants' Production of Documents (NBD_Witt000242-260)<br>• Reseller Services Agreement between Partnership Staffing and NBD<br>• Webscrape - KAPOW Technologies Inc. Software License Schedule and updates to that contract |
| 10/10/16 | Defendants serve SafeRent's Supplemental Responses to Witt's First Interrogatories |
| 10/10/16 | Defendants serve NBD's Supplemental Responses to Witt's First Interrogatories |
| 10/10/16 | Defendants serve SafeRent's Objections to Plaintiffs' Second Requests for Admission |
| 10/10/16 | Defendants serve NBD's Objections to Plaintiffs' Second Requests for Admission |
| 10/11/16 | Defendants' Fourth Production of Documents (NBD_Witt000261-299)<br>• Partial Results Returned Database Information for Willie Stanley |
| 10/14/16 | Defendants serve their Second Supplemental 26a1 Disclosures |
| 10/20/16 | Defendants' Production of Documents (NBDWitt_000300-343) |

| | |
|---|---|
| | • Webscrape - Kapow Bulk Virginia General District and Circuit Court Loading Documents<br>• Partial Results Returned Database information for Carolyn Barnes<br>• Order information Regarding Named Plaintiffs<br>• Affiliate Services Agreement between NBD and OMNI Data, LLC |
| 10/23/16 | Defendants' Production of Documents (NBDWitt_000344-412)<br>• Emails between CL and Trans Union regarding data sale<br>• Emails between CL employees regarding webscrape, data available for Virginia, and obtaining records from Henrico and Chesterfield<br>• Emails regarding sale of data to Hygenics<br>• Emails with Virginia Supreme Court employee Bob Smith regarding availability of YOB in Virginia court records<br>• Emails between CL employees re: Virginia DOC and State Police Records |
| 10/24/16 | Plaintiffs' counsel learns the full nature, issues, and discovery history in *Taylor* and *Williams.* |
| 10/24/16 | Discovery conference among the Parties and the Court |
| 10/26/16 | United States District Court for the District of Maryland issues decision on pending Motion to Compel in *Williams*[4] |
| 10/26/16 | Plaintiffs' Counsel again attempts to meet and confer with Defendants' Counsel regarding *Williams*, Requests for Admission, and other discovery issues. |
| 10/28/16 | Defendants serve Responses and Objections to Plaintiffs' Second Requests for Admission |

## OVERVIEW OF DEFENDANTS' POSITIONS AND CONDUCT

Defendants' discovery positions and objections have been based on several discrete strategies and mistaken views of their obligations. These inform nearly all of the matters herein presented.

**First, Defendants have taken the position that they need offer no more in discovery than they did in the *Henderson* case**. The Defendants have decided to rely entirely on the same positions raised in the *Henderson* case, despite the fact that this case has different plaintiffs, largely different allegations, an additional defendant, a non-bifurcated schedule, and, after the Court's summary judgment ruling in *Henderson*, a clearer focus on the law at issue. While *Henderson* has

[4] Plaintiffs attach that decision as Exhibit "1."

only addressed the issue of class certification, there are many more issues being litigated here—not only the merits of Plaintiffs' § 1681k class claim and whether the case is appropriate for class certification, but also a § 1681b claim, an individual § 1681e(b) claim, and willfulness.

The Court previously admonished the Defendants to make case-specific and compete discovery responses and disclosures. But they only minimally did so and then with hardly a month left in discovery. While Defendants' written discovery responses all relied on and "adopted" what had been stated in *Henderson*, their initial Rule 26(a)(1) Disclosures (attached as Exhibit "2") were the most remarkable because Defendants simply attached the years-old *Henderson* Rule 26(a)(1) disclosure as an exhibit. For their witness disclosure, they did not even bother to retype it or update the fact that many of the witnesses listed were irrelevant to this case or were no longer employed by Defendants. The Court explicitly chastised Defendants' Counsel on this point, but revised discovery responses and disclosures, as minimal as they were, were not provided until October.

**Second, Defendants objected to nearly 100% of Plaintiffs' written discovery, did not provide a privilege log and produced only 412 pages of documents**—which largely consists of irrelevant contracts with out-of-state court clerks. Many of these documents are completely unrelated to this case. Of the documents that are relevant, many are heavily redacted. And even these redacted documents were only recently served—Plaintiffs received them with less than two weeks left in the discovery period and on the eve of depositions.

Even worse, the Defendants have objected to almost all of the Plaintiffs' discovery requests, including every single request for admission contained in the Plaintiffs' Second Set of Requests for Admission. Many, if not most, of these objections are not well-founded and are simply meant to hinder the effective and timely prosecution of this case. And despite these

overzealous objections and withholding of documents from the discovery process, the Defendants have never served a privilege log.

**Third, Defendants are refusing production because of their idiosyncratic view of the law that they are not governed by the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x**. Defendants' objection and responses to most of Plaintiffs' discovery requests included their contention that they need not produce any documents or answer any interrogatories because their reports are not "consumer reports" governed by the FCRA. Relatedly, Defendants also refuse to provide any information about the many other products that Defendants sell because they contend that although those may be FCRA governed, they are different than the employment reports they sell through NBD. But the Rule 26 scope and standard for discovery permits broad discovery of potentially relevant evidence. FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id*.

Defendants' argument—that the reports they sell as SafeRent directly to employers or for other acknowledged FCRA purposes (such as their tenant reports) are not probative of whether their NBD reports are consumer reports—is itself incredible as contrary to the very text of the statute. 15 U.S.C. § 1681a(d)(1). A "consumer report" is one that includes information that meets certain characteristics ("bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living") and where such information "is used, expected to be used or collected in whole or in part" for use for an FCRA purpose. *Id*. The specific use made by a particular report user does not determine whether it is a consumer report. *Ippolito v. WNS, Inc*., 864 F.2d 440, 452–53 (7th Cir. 1988) ("The fact that the reports are neither used nor expected to be used for a consumer purpose, however, does not necessarily mean that the report is not a consumer report. The definition of consumer report also

looks at why the information contained in the report was originally collected or expected to be used."). Accordingly, if SafeRent regularly treats all of its reports and information sales as FCRA governed, it cannot credibly assert that the sale of the same information to and through NBD is not FCRA governed. Such evidence is relevant for both liability and willfulness.

Furthermore, and contrary to the Defendants' argument that they are not governed by the FCRA, in their day-to-day business operations, the Defendants treat their information as regulated by the FCRA. One of their employees, Michael Hall, admitted that [REDACTED] (Deposition of Michael Hall at 56:18–57:14 (attached as Exhibit "3"). Another employee, Sharon Goodman, [REDACTED] (Deposition of Sharon Goodman at 26 (attached as Exhibit "4") [REDACTED]

The evidence about the process used in generating these reports is obviously relevant here to the extent that Defendants considered and wrote about the problems of trying to match criminal records to specific consumer reports without full sets of identifiers. This was evidence recently uncovered in *Williams* and mentioned in the eleventh hour e-mail documents Defendants finally produced—on the eve of depositions.

**Fourth, production of the depositions and documents already produced or to be produced in *Taylor* and *Williams* presents zero burden**. As Plaintiffs' Counsel advised the Court, Plaintiffs have very recently learned of substantial discovery produced in two other

SafeRent cases, *Taylo*r, and *Williams*.[5] In both cases, the plaintiff had to prosecute a significant motion to compel against defendant and opposite the same lawyers as in this case. In *Taylor*, the plaintiff described the case as follows: "In this case, Plaintiff alleges that SafeRent uses overly broad matching criteria in response to its customers' requests for consumer reports in violation of § 1681e(b) of the Fair Credit Reporting Act ('FCRA')."[6] Mem. in Support of Mot. to Compel and for Sanctions, *Taylor v. CoreLogic SafeRent*, *LLC*, 1:15-cv-1405 (E.D. Va.), ECF No. 42, at 1 (attached as Exhibit "5"). Magistrate Judge Anderson granted the motion to compel, which sought production of a discovered "'elaborate' study conducted by SafeRent regarding the performance of its current matching algorithm and its likelihood to produce 'false positives.'"; monthly updates of the study; "documents regarding [Defendant's] matching procedures—i.e., drafts of the manuals, e-mails exchanging or discussing the procedures and their implementation." *Taylor*, 1:15-cv-1405, ECF Nos. 42, 59. The same information, as well as broader production of procedures and willfulness documents were also ordered in Judge Anderson's granting of a previous motion to compel. *Taylor*, 1:15-cv-1405, ECF No. 26. All of these disputes and the court's rejection of SafeRent's objections occurred in *Taylor* while the Motion for Reconsideration in this case was pending.

Plaintiffs here also just learned that the two primary witnesses designated by Defendants in this action were recently deposed in *Taylor.* As with all of the documents and other discovery produced in *Taylor*, Defendants here have expressly stated that they will not produce anything,

---

[5] While Plaintiffs' counsel understood that *Taylor* and *Williams* were cases pending against Saferent, it was only very recently that they learned of the similarities with this action.

[6] Both *Taylor* and *Williams* were brought pursuant to 15 U.S.C. § 1681e(b). This is also one of the claims now prosecuted by Plaintiff Witt. Further, the issues in those matters remain related to those regarding Plaintiffs' § 1681k(a)(2) proofs.

including the prior statements and depositions of these key witnesses in *Taylor*. Because Defendants there designated all such documents and depositions confidential, Plaintiffs here cannot otherwise obtain them.

Even more recently, present defense counsel fought and lost a new round of discovery motions in *Williams*. Defendants produced substantial information not provided in this case, including a large privilege log listing documents and communications raised in *Taylor*—reviews and analyses of FCRA governance and the problems with SafeRent's loose match rules for incomplete public records. That motion to compel was granted just last week. Ex. 2, *Williams*, PX 16-58, ECF No. 79. Defendants still refuse to produce here the documents ordered and/or produced in *Williams*.

**Finally, fifth, Defendants' production of some documents and identification of its witnesses at this stage occurs too late to meaningfully conduct proper discovery**. Defendants served their initial Rule 26(a)(1) disclosures on July 8, 2016. As stated herein, these disclosures simply incorporated the disclosures made in the *Henderson* case, despite that many of the witnesses were irrelevant to this case. The Defendants also disclosed Robin Small, Matthew Knowles, and Praveen Chandramohan as the only employee-witnesses with knowledge of the case. Defendants supplemented their disclosures on August 26, 2016. They did not identify any additional witnesses, but produced 178 pages of documents. Most of these documents were largely irrelevant to this case. The Defendants again supplemented their disclosures on October 14, 2016—approximately two weeks before the close of discovery—and disclosed 120 pages of additional documents and multiple new witnesses, including Steve Flick, Linda Watts, Michael Hall, Richard Leurig, Joseph Davidson, Sharon Goodman, and Robert Smith. On October 20, 2016, Defendants served 42 pages of documents and on October 23, 2016—the last business day

before the start of numerous depositions—they served 68 pages of highly relevant e-mail chains, several of which were heavily redacted. (attached hereto as Exhibit "21").

Due to the Defendants' late disclosure of these witnesses, Plaintiffs were forced to notice numerous depositions in the last two weeks of discovery, often scheduling two or three depositions a day. As the breadth of the Defendants' discovery noncompliance became more clear—particularly as to the failure to provide the *Taylor* and *Williams* documents, these depositions were ultimately postponed so that this motion could be prosecuted. In the current posture, the Plaintiffs are severely prejudiced, as they cannot serve any follow-up discovery requests in that discovery is currently set to close on November 1, 2016.

## SPECIFIC DISCOVERY SOUGHT

### A. Documents.

Plaintiffs have served two sets of requests for production of documents on Defendant SafeRent and one set on Defendant NBD.[7] Defendants objected to nearly every single request.

#### 1. First Set of Requests for Production to SafeRent, Nos. 12, 17, 25, 30, 43, 44 and 50 (and corresponding requests to NBD).

Last week, hoping to narrow the issues before the Court telephonically, Plaintiffs addressed seven specific requests from their first set of document requests. Defendants have not produced any documents since that call.

##### *a. Plaintiffs' Request for Production of Documents No. 12 to SafeRent*

[7] SafeRent's Objections to Plaintiffs' First Set of Request for Production of Documents are attached as Exhibit "6"; SafeRent's Responses and Supplemental Responses to Plaintiffs' First Set of Request for Production of Documents are attached as Exhibit "7"; NBD's Objections to Plaintiffs' First Set of Request for Production of Documents are attached as Exhibit "8"; and NBD's Responses and Supplemental Responses to Plaintiffs' First Set of Request for Production of Documents are attached as Exhibit "9."

This request seeks documents recommending or suggesting changes to SafeRent's practices to avoid the reporting of inaccurate information on its employment consumer reports. SafeRent objections on numerous grounds. Ex. 6 at 5. SafeRent's objections are not well taken. These issues have already been litigated in *Taylor* and *Williams*. The evidence certainly is no longer protected as it was ordered and produced in those cases.

The attorney-client and work-product objections must be overruled because neither SafeRent nor NBD ever provided a privilege log.  Every document that Defendants have withheld based on a privilege objection, but which was not described and sufficiently detailed in a privilege log, must be compelled. Privilege is waived. Rule 26(b)(5) provides:

> **(b)(5)** ***Claiming Privilege or Protecting Trial-Preparation Materials.***
> **(A)** *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> **(i)** expressly make the claim; and
> **(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26.  For nearly every document at issue in this Motion, Defendants have refused to provide any description, let alone one that "will enable other parties to assess the claim."

The Plaintiffs will not belabor the Court with the case law relating to the level of detail or description required by a privilege log, because the Defendants have made the analysis much more straightforward by their discovery conduct. They have made **no** effort to create a privilege log with respect to nearly the entirety of the substantial set of documents withheld based on an assertion of privilege. It is uncontroverted that Rule 26(b)(5) unambiguously demands something; anything. These Defendants have provided nothing. Regardless of a theoretical dispute regarding the degree of detail required in a privilege log, a party cannot simply refuse to provide one (especially in

violation of a Court's order, as in this case) as to documents it seeks to withhold based on privilege. As this Court has consistently held:

> For many years, courts have required that parties claiming privileges demonstrate entitlement thereto in a list or log that describes the ground of the putative protection with a degree of specificity that allows the opposing party to assess the assertion of the privilege against the applicable tests and to challenge any claim thought to be wanting. That assessment and any challenge, of course, must be done on the basis of the description contained on the log (or an equivalent pleading) because the opposing party does not have access to the putatively privileged document when seeking to mount a challenge to a privilege claim. Accordingly, the descriptions in the log must satisfy the claiming party's burden.

*Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D. Va. 2004).

When a party refuses to provide a timely privilege log (or as in this case, refuses to provide one at all), it forfeits the use of privilege as a basis for its objections. *Id*. at 273.

Additionally, SafeRent's claim that the phrase "consumer reports" is vague and ambiguous is disingenuous, as its response states that it does not sell consumer reports. (Ex. 7 at 9) Obviously, if SafeRent contends that it does not sell consumer reports, then it is well aware of the term's meaning. SafeRent's argument that the request is overbroad because it is not limited in time and because it uses the word "every" is also meritless.

And, contrary to SafeRent's assertion, the information sought by this request is highly relevant to Plaintiffs' merits claims and proof that the Defendants' violations of the FCRA were willful. Whether or not the Defendant made any changes to prevent inaccurate public record information from appearing in employment consumer reports is certainly relevant to the issue of whether or not the Defendants' violation of the FCRA was intentional or reckless.

***b. Plaintiffs' Request for Production of Documents No. 17 to SafeRent***

This request seeks SafeRent's manuals containing its standards and/or requirements for authorizing or approving the sale of public record information to a third party. (Ex. 6 at 17).

SafeRent's objections are meritless. Again, and as discussed above, the attorney-client, work-product, "and any other applicable privilege or protection" objections must be overruled because SafeRent never provided a privilege log.

Furthermore, the request is not overbroad simply because it is not limited in time or because the Plaintiffs requested "all" documents. At a minimum, SafeRent was required to produce the documents from the time period at issue in the case. Then, if Plaintiffs needed additional information, they would have met and conferred with SafeRent to obtain it. Plaintiffs similarly met and conferred about the supposedly non-relevant products and processes not identified in the Complaint. But, as with the other requests at issue in this case, the Defendants have been unwilling to supplement their responses.

And SafeRent's response that is doesn't sell "consumer reports" is completely nonresponsive. The request does not ask about the sale of consumer reports, but instead asks about the sale of criminal records, civil judgment or bankruptcy information. It is not disputed that SafeRent provides this type of information to third parties. In fact, SafeRent does sell its information to third parties through an intermediary—Defendant NBD. This Court should find that SafeRent's response is inadequate and compel it to provide a full response.

**c. *Plaintiffs' Request for Production of Documents No. 25 to SafeRent; Plaintiffs' Request for Production of Documents No. 14 to NBD***

This request seeks Defendants' marketing materials that describe the characteristics of Defendants' employment consumer reports. (Ex. 6 at 13; Ex. 8 at 5).

The term "consumer report" is not vague in this case—and Defendants' claims that it is are surprising, given that Defendants repeatedly assert that they do not sell or compile consumer reports in their responses to Plaintiffs' discovery requests. The information sought by this request is relevant, as Plaintiffs believe that this marketing material will contain information about the

types of identifying information that is available in the Defendants' database. This belief was confirmed during the deposition of Sharon Goodman, who testified [REDACTED] (Ex. 4, Goodman Dep. at 23–24.) This document is obviously highly relevant to Plaintiffs' claims against the Defendants. Finally, the request is not overbroad simply because it is not limited in time or because it uses the word "all." All of these objections should be overruled.

In addition to the list of missing information in the Defendants' systems, Ms. Goodman also stated [REDACTED] (Ex. 4, Goodman Dep. at 18.) All of these documents are relevant to Plaintiffs' claims and should be produced. Furthermore, Defendants' reference to documents produced in the *Henderson* case are unhelpful, as the Defendants do not identify where in the bates ranges—which contains hundreds of thousands of pages—these marketing materials can be found.

***d. Plaintiffs' Request for Production of Documents No. 30 to SafeRent***

This request seeks SafeRent's section 1681k compliance documents. (Ex. 6 at 16). SafeRent's objections are meritless. Again, the attorney-client and work-product objections must be overruled because the SafeRent never provided a privilege log. Furthermore, the request is not overbroad simply because it is not limited in time or because the Plaintiffs request "all documents." And although the Plaintiffs have attempted to meet and confer about the ESI objections, the Defendants have not supplemented their response. Additionally, SafeRent's objection that these documents are not relevant to a willfulness analysis is untrue. Certainly these documents could support an allegation that the Defendants were reckless in their interpretation of the FCRA because they did not even attempt to comply with section 1681k of the FCRA.

As discussed above, SafeRent's litigation contention that it is not governed by the FCRA is not supported by its actual business practices. Mr. Hall and Ms. Goodman both testified [REDACTED] (Ex. 3, Hall Dep. at 56:18–57:14; Ex. 4, Goodman Dep. at 26.) Ms. Goodman also testified [REDACTED] (Ex. 4, Goodman Dep. at 26.) Ms. Watts testified [REDACTED] (Ex. 19, Watts Dep. at 25.) And Ms. Goodman [REDACTED] (Ex. 4, Goodman Dep. at 19.) All of these documents are relevant and must be produced.

And again, Defendants' reference to documents produced in the *Henderson* case are unhelpful, as the Defendants do not identify where in the bates ranges—which contains hundreds of thousands of pages—these compliance materials can be found.

Defendants recently did produce a handful of emails responsive to this request but limited to the Virginia Supreme Court records. Plaintiffs have sought here the broad set of completeness related and other § 1681k documents. And certainly the *Taylor* and *Williams* documents and communications regarding loose matching rule problems should be produced.

***e. Plaintiffs' Request for Production of Documents No. 43 to SafeRent; Plaintiffs' Request for Production of Documents No. 28 to NBD***

This request seeks a copy of Defendants' Results Returned database. (Ex. 6 at 25-26; Ex. 8 at 13).

An updated copy of the Results Returned Database is highly relevant to this case. The class period in this case is much broader than the records contained in the copy of the database that NBD produced in the *Henderson* case. The Results Returned database copy only contains records on reports sold between March 14, 2007 and June 9, 2013. Here, the class period ranges from June

26, 2010 to the present. Any analysis that Plaintiffs' counsel would seek to perform for their class certification motion, including a class list and the ascertainability of class members, would be limited because the copy of the database that they have is not complete. It would also limit the ability of this Court to independently evaluate whether or not class certification is appropriate in this case. The fact that the structure of the database has not been altered over time does not alleviate the prejudice that the Plaintiffs will face if they are denied access to the information contained in the database.

And the Defendants' cry of undue burden is simply unfounded. The size of the database is not prohibitively large—it could likely fit on a large flash drive. The Virginia Supreme Court produced a much larger database in approximately ten days in the *Henderson* case. There is no reason that it would take the Defendants "weeks" to produce a copy of their database.

It should also be noted that the Defendants objected to this request because the Plaintiffs had not provided the Defendants with their identifying information. This information was provided to defense counsel months ago, but the objection has not been withdrawn. The Defendants' objection to these requests should be overruled and the Defendants should be compelled to produce an updated copy of their Results Returned database.

***f. Plaintiffs' Request for Production of Documents No. 44 to SafeRent; Plaintiffs' Request for Production of Documents No. 29 to NBD***

This request seeks a copy of Defendants' Multistate Database. (Ex. 6 at 26; Ex. 8 at 13-14).

The Multistate database is highly relevant to the claims in this case. While the Results Returned database contains information regarding every report that the Defendants sold, the Multistate database contains all of the information that the Defendants received about each of the public records in their system, either from the Courthouse, by bulk feed, by webscrape, or

otherwise. The information in the Multistate database is what is used to populate the "offense" table of the Results Returned database. By looking at the Multistate database, the Plaintiffs will be able to ascertain if the Defendants do not collect certain identifying information from certain jurisdictions. For example, if the Defendants do not collect year of birth information for Virginia court records, the Multistate database will reflect their failure to collect that information. Contrary to the Defendants' assertions, this database does not contain any confidential information because it is comprised entirely of public record information.

And the Defendants have offered no proof of the burden that they will incur if they are forced to produce this database other than a conclusory statement that it will take "weeks and dozens of employee hours." Such a statement is not adequate to support an undue burden objection. *Mainstreet Collection, Inc. v. Kirklands, Inc.*, 270 F.R.D. 238 (E.D.N.C. 2010). The objecting party must provide more to support its claim. It must demonstrate specifically how, given the liberal construction afforded the federal discovery rules, the discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *Cappetta*, Civ. No. 3:08CV288, at 6–7. The Defendants have provided no such affidavits or evidence. Defendants' objections should be overruled and they should be compelled to produce a full version of the Multistate database.

***g. Plaintiffs' Request for Production of Documents No. 50 to SafeRent; Plaintiffs' Request for Production of Documents No. 35 to NBD***

This request seeks all communications between the Defendants and their subscribers since June 2010 that reference 1681b, 1681e, 1681k (or Section 604, 607, and/or 613) of the FCRA. (Ex. 6 at 17; Ex. 8 at 13-14). Plaintiffs narrowed this to include only those communications that regard the remaining FCRA sections at issue here. Defendants have not articulated or proven any specific burden in providing these materials, which would likely admit that its products are FCRA

governed, show Defendants' knowledge of the obligations under these FCRA provisions, and otherwise provide both liability and willfulness evidence.

**2. Other Requests for Production.**

Plaintiffs have met and conferred regarding all of their outstanding requests for production. In fact, the narrowed list of seven requests listed for the Court was not otherwise exchanged with Defendant before the informal communication to the Court. Given the effort now required to obtain discovery—this motion—and the very recently discovered evidence in this case (via depositions and recently produced e-mails) and in *Taylor* and *Williams*, Defendants also clearly have withheld other documents also requested and now sought in this motion.

***a. Plaintiffs' Request for Production of Documents to SafeRent No. 5***

This Request seeks information regarding the Plaintiffs that SafeRent sent to or obtained from third parties. (Ex. 7 at 4.) SafeRent, of course, objected to the request on the grounds that the term "consumer report" is vague, Plaintiffs' identifying information has not been provided to the Defendants, and because the request is not limited in time. All of these objections have been discussed above and are meritless. SafeRent supplemented its initial non-response by directing Plaintiffs to the output from their Results Returned Database. (*Id.*) This response is wholly inadequate, particularly in light of the fact that Plaintiffs have only very recently learned that SafeRent also sold the Plaintiffs' consumer report information in bulk to at least two other third parties—Trans Union and Hygenics. And while such sales were without any permissible purpose under the FCRA, SafeRent did not identify them at all in its supplemental responses. SafeRent's objections to this response should be overruled and it should be compelled to produce the responsive documents.

***b. Plaintiffs' Request for Production of Documents to SafeRent No. 20***

This Request asks for information explaining details of how SafeRent obtained the criminal public records it attributed to Plaintiffs. (Ex. 7 at 14.) SafeRent offers only unsupported objections that it does not "report" records in response to NBD search queries, and then refers generally to a raft of documents produced in *Henderson* and contracts with public-record vendors. (*Id.*) These responses are again inadequate given that Plaintiffs learned late in this case that Defendants actually obtain all of their Virginia criminal and sex-offender records via their own internally created webscrape program, the details of which have not been produced in this case or in *Henderson*. While Defendants have produced some documents related to webscraping through third-party software, KAPOW, the Defendants' employees testified that the Defendants stopped using KAPOW approximately two years ago and now use their own software to webscrape Virginia records. Ex. 3, Hall Dep. at 20:17-22:1. Plaintiffs are clearly entitled to discover documents about this system and the Defendants should be compelled to produce it.

***c. Plaintiffs' Request for Production of Documents to SafeRent No. 31***

Here, Plaintiffs ask for information describing the meaning of codes within its software for the creation of its products. (Ex. 7 at 19–20.) SafeRent again objects, directs Plaintiffs to *every document* produced in *Henderson*, then to some of the specific documents from *Henderson* (roughly 100,000 pages of information). (*Id.*) Notably, SafeRent identifies nothing produced in *Taylor* or *Williams*, despite that his case has become largely about whether Saferent's matching rules permit the furnishing of complete public records and reports. The *Taylor* and *Williams* documents would be directly on point, as the *Williams* court noted:

> As early as 2012, CoreLogic began reviewing its matching logic and algorithms to help it identify issues related to potential consumer report inaccuracies, i.e., the prevalence of false positives or false negatives. In 2014, CoreLogic conducted a review of its matching processes, resulting in certain changes to its matching procedures in late October 2014 (internally referred to as "Phase I" of the review). It engaged in another review of its matching processes in 2015 and 2016.

> . . .
>
> Internal commentary regarding CoreLogic's knowledge of a matching problem, the steps it took to fix that problem, and the solutions it considered is relevant to whether CoreLogic's chosen procedures were, or are, objectively reasonable.
>
> . . .
>
> Documents demonstrating the information CoreLogic had at the time it considered alternate procedures to limit the number of consumer report errors, as well as the feasibility of alternative procedures it had at its disposal, are relevant to whether CoreLogic knowingly or recklessly violated the FCRA.

Ex. 2, *Williams*, PX 16-58, ECF No. 79 at 3, 5, 6. This information is clearly relevant, as the Defendants' matching procedures will likely indicate whether or not the Defendants even possess the a complete public record or not. The Defendants should be compelled to produce documents described in the *Taylor* and *Williams* decisions.

***d. Plaintiffs' Request for Production of Documents to SafeRent No. 35***

This request seeks documents regarding any of Defendants' fact or expert witnesses, including any prior testimony. (Ex. 7 at 22–23.) The Defendants have not disclosed anything other than what was offered in *Henderson*, despite the fact that at least two of the disclosed witnesses in this case have been deposed in *Williams* or *Taylor*. These witnesses' prior testimony is highly relevant to this case, particularly given the overlap in claims. It will also be used to prepare for and take the deponents' depositions in this case. This Court should overrule the Defendants' objections and compel them to produce the responsive documents.

***e. Plaintiffs' Request for Production of Documents to SafeRent No. 37***

This Request asks for documents SafeRent possesses regarding its permissible purpose for the provision of Plaintiffs' reports to its customers. (Ex. 7 at 24.) SafeRent responds with the familiar refrain that it does not "generate consumer reports," and then points to all of the documents

produced in *Henderson*, with a specific 4,700 page subset, as well as some Plaintiff-specific documents. (*Id.*) This response is not persuasive for the reasons discussed above, nor is Defendants' reliance on the *Henderson* documents helpful, as that case does not involve a permissible pull claim. The Court should overrule SafeRent's objections and compel it to provide the responsive documents.

***f. Plaintiffs' Request for Production of Documents to SafeRent No. 48*** [8]

Here, Plaintiffs seek email communications between SafeRent and employees of the Supreme Court of Virginia since 2010. (Ex. 10 at 20.) SafeRent has only recently produced responsive documents, but only for 2014 forward. Notably, one of these documents indicates that [REDACTED] (attached as Exhibit "20"). [REDACTED] Given the importance of this information, and the fact that the Defendants presumably had other, similar correspondence with the Supreme Court, any documents dating back to 2010 are relevant and the Court should order them produced.

***g. Plaintiffs' Request for Production to SafeRent, No. 49***

This Request asks for documents showing SafeRent's compliance procedures since June 2010. (Ex. 10 at 20.) As noted above, just last week the *Williams* court ordered SafeRent to produce audits and reports relating to its matching processes, and such information is undoubtedly relevant here. As discussed above, the *Williams* and *Taylor* cases established that these documents exist.

[8] SafeRent did not include Request Nos. 48-50 in their Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents. Therefore, SafeRent's original responses to these requests are attached as Exhibit "10."

They are highly relevant to this case, particularly to the issue of whether or not the public records that the Defendants reported about the Plaintiffs were complete and up to date, as well as to Plaintiff Witt's individual 1681e(b) mixed-identity claim. This Court should echo the *Williams* decision and require that same information produced here.

**C. Defendants' Refusal to Respond to Plaintiffs' Request for Admissions**

Defendants' discovery gamesmanship is not limited to the document requests addressed above. Plaintiffs served two sets of requests for admission on each Defendant, and every single request has been met with staunch opposition. The Parties have met and conferred on all of these requests, yet Defendants refuse to provide appropriate responses.[9]

All of Defendants' responses are made "subject to" a litany of objections. The problem with producing "subject to" objections is obvious: it leaves requesting parties at an unfair disadvantage because they cannot determine whether a response is (1) complete or (2) made at all. Courts of course recognize these issues and have long loathed the tactic, concluding:

> This type of answer hides the ball. It leaves the [opposing party] wondering . . . what documents are being withheld. Furthermore, it permits the defendant to be the sole arbiter of that decision. Such an objection is really no objection at all as it does not address why potentially responsive documents are being withheld. [The responding party], having no incentive to err on the side of disclosure, has arrogated to itself the authority to decide questions of relevance which is unquestionably the decision of the judge.

---

[9] SafeRent's Objections to Plaintiffs' First Set of Requests for Admissions are attached as Exhibit "11"; SafeRent's Responses to Plaintiffs' First Set of Requests for Admissions are attached as Exhibit "12"; NBD's Objections to Plaintiffs' First Set of Requests for Admissions are attached as Exhibit "13"; NBD's Responses to Plaintiffs' First Set of Requests for Admissions are attached as Exhibit "14"; SafeRent's Objections to Plaintiffs' Second Set of Requests for Admissions are attached as Exhibit "15"; SafeRent's Responses to Plaintiffs' Second Set of Requests for Admissions are attached as Exhibit "16"; NBD's Objections to Plaintiffs' Second Set of Requests for Admissions are attached as Exhibit "17"; and NBD's Responses to Plaintiffs' Second Set of Requests for Admissions are attached as Exhibit "18".

*Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 248 (M.D.N.C. 2010) (citing *Athridge v. Aetna Casualty & Surety Co*., 184 F.R.D. 181, 190 (D.D.C. 1998), alterations in original). As Judge Hudson put it, again recognizing and adopting the national rejection of this approach:

> [T]he practice of providing answers "subject to" objections "is confusing and misleading. Moreover, it has no basis in the Federal Rules of Civil Procedure." The practice is misleading as "the propounder of the interrogatory is 'left guessing as to whether the responding party has fully or only partially responded to the interrogatory.' "Therefore, the Southern District of California has held that "responses that are made 'subject to' and 'without waiving the foregoing objections,'. . . are improper, the objections are deemed waived, and the response to the discovery request stands."

*Turnage v. Clarity Servs., Inc.*, No. 3:14CV760 HEH-RCY, 2015 WL 5092695, at *2 (E.D. Va. July 22, 2015) (citations omitted, alterations in original). The same result should apply here.

Additionally, throughout the Defendants' Responses to Plaintiffs' Second Sets of Requests for Admission, the Defendants consistently refuse to respond to certain requests and instead state that the "content of the Results Returned database speaks for itself." This response is not proper under the Federal Rules. Under Fed. R. Civ. P. 36, a party responding to a request for an admission has four possible responses—admit the request (in part or in full), deny the request (in part or in full), set forth reasons why the party cannot admit or deny the request, or object to the request (by a specific objection or a motion for a protective order). If a request is not admitted, the rule requires that

> the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Defendants' responses that the database "speaks for itself" clearly do not comply with the Rules.

Therefore, this Court should order them admitted. Fed. R. Civ. P. 36(a)(6); *House*, 232 F.R.D. at 262 ("Gamesmanship in the form of non-responsive answers, vague promises of a future response, or quibbling objections can result in the request being deemed admitted or in a post-trial award of monetary sanctions without prior opportunity to correct the deficiency."); *Bullock*, 2011 WL 5101777, at *2 ("Because Bullock admitted that she received a copy of the documents at issue and because her partial denials violate Rule 36, the Court will deem these requests admitted."); *see also Tequila Centinela*, 247 F.R.D. at 202; *Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 168 (D. Conn. 2005).

**D. Defendants' Refusal to Produce a Fed. R. Civ. P. 30(b)(1) Witnesses**

Plaintiffs have asked Defendants to produce a witness under Rule 30(b)(1) regarding their compliance decisions and the reasons behind them. Defendants have refused, offering instead to stipulate that they will not assert an advice-of-counsel defense. Plaintiffs countered, reasonably and unsurprisingly given the history of this litigation and the Court's FCRA decisions, that Defendants also stipulate that they have not taken a reading that their activities are not governed by the FCRA provisions at issue. *See Milbourne v. JRK Residential Am., LLC*, __ F. Supp. 3d __, No. 3:12CV861, 2016 WL 4265741, at *6 (E.D. Va. Aug. 11, 2016) ("To take advantage of the 'objectively reasonable interpretation' safe harbor, *Safeco* requires that the defendant have 'adopt[ed]' and acted on an interpretation of the statute.") (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.20 (2007), alteration in original). Defendants refused. Since willfulness is at issue here, such information is undoubtedly relevant.

To that end, Plaintiffs seek testimony from Defendants' most knowledgeable person regarding how they reached their positions relative to the FCRA and what those positions are. Given that the contracts between Defendants and among Defendants and BIG and HireRight

confirm that at least *someone* thought the FCRA applied to the information being exchanged, and Plaintiffs have the right to learn what Defendants knew during the relevant period. Defendants' decision to forgo an advice of counsel defense has no bearing at all on the willfulness questions to which this information pertains.

Moreover, the absence of a privilege log in this months-long discovery process prevents Plaintiffs from learning even at a high level whether Defendants had any interpretation of the FCRA's application to their sale of employment-purposed searches or reports. This failure, coupled with a lack of testimony regarding Defendants' interpretations and application of the FCRA to their products, hampers Plaintiffs from making any cogent responses to the *Safeco* arguments Defendants will undoubtedly raise. It is patently unfair to permit Defendants to defend willfulness with *Safeco* reasonableness arguments while preventing Plaintiffs from learning what Defendants' interpretations of the FCRA were.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant the Plaintiffs' Motion to Overrule Objections and to Compel Full Discovery Responses, as outlined above, and extend the Plaintiffs' time to conduct discovery until 45 days after the Defendants have complied with the Court's order regarding this Motion.

Respectfully submitted,
**PLAINTIFFS, *for themselves and on behalf of all similarly situated individuals,***

By______/s/________________
Of Counsel

Matthew J. Erausquin, VSB No. 65434
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314

Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com

***Counsel for the Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, 2016, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony, VSB No. 31696
Alan D. Wingfield, VSB No. 27489
Timothy J. St. George, VSB No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel: 804-697-5410
Fax: 804-698-5118
david.anthony@troutmansanders.com
alan.wingfield@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for the Defendants*

/s/

Matthew J. Erausquin, VSB No. 65434
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com