**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Richmond Division

CAROLYN WITT, *et al.*, *on behalf of* :
*themselves and all others similarly situated,* :
                                                        :
            Plaintiffs,                                :
v.                                                     :            Civil Action No: 3:15-cv-386
                                                        :
CORELOGIC SAFERENT, LLC, *et al.*,      :
                                                        :
            Defendants.                              :

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL</u>**

The Plaintiffs, by counsel, hereby respectfully submit their memorandum of law in

opposition to Defendants' Motion to Compel (Dkt. No. 115).

Defendants' filing of this motion was largely unnecessary. The bulk of the motion—

which concerns responses to contention interrogatories—is premature. Courts around the country

have recognized that contention interrogatories are largely unnecessary until the end of the

discovery process. And, because of the Defendants' own approach to discovery compliance in

this case over the course of many months, the parties have more work to do.

Defendants' discovery conduct in this case is addressed at length in Plaintiffs' pending

Motion to Compel.  But, until Defendants have complied with their own discovery obligations,

the Plaintiffs will not have all of the information necessary to fully respond to Defendants'

contention interrogatories.  Despite this, and the fact that the contention interrogatories

themselves as posited by the Defendants are used incorrectly -- no unknown facts, but simply an

attempted preview of the legal arguments to be included in their class certification brief,

Plaintiffs have nonetheless agreed to serve supplemental responses once discovery has

completed, including the production of the significant amount of electronic data expected on

1

November 15, 2016 as ordered.   If the full database is (again) not produced (as the Defendant's email communications seem to indicate will be the case), this will further delay the completion of discovery, and the accompanying contention interrogatory answers in this matter, as Plaintiffs will need to pursue a second show cause motion in the *Henderson* matter.

The other two items raised by the Defendant's motion - settlement amounts and, generally, "HR Plus documents" - are attempts to paint conflict or obstruction where none exists in the face of their own far reaching discovery noncompliance, presumably adopting the maxim that "the best defense is a good offense".   Defendants are well aware that Plaintiffs agreed to produce the confidential settlement amounts in the CMA and HR Plus cases if this Court entered an Order allowing Plaintiffs to provide this confidential information. To date, Defendants have not circulated a Proposed Consent Order for Plaintiffs' signature.  They simply filed their motion.  Regarding the HR Plus documents, the items that the Defendants have requested were already produced, are largely irrelevant or do not exist. The pleadings are publically available on PACER. No depositions were taken in the case. And, with very few exceptions, the documents that Ms. Witt produced in the HR Plus matter are duplicative of the documents that she already produced in this matter. [1]

## PROCEDURAL HISTORY

Contrary to Defendants' assertions, Plaintiffs have worked with the Defendants throughout the discovery process in this case. After the Parties' September 23, 2016 in-person

---

[1] The sole exceptions are Plaintiffs' tax returns, a recommendation letter, and an updated copy of her resume.  Plaintiff Witt agrees that the latter two documents, while entirely irrelevant, can be produced and will do so.  She, however, will not turn over her tax returns absent an Order from this Court.  Defendants are entitled only to relevant evidence and have failed thus far to demonstrate that a fact of consequence in deciding the action is more or less probable than it would be without this evidence.  Plaintiff has broadly complied with any number of discovery requests as the Defendant have scoured her background intensely for any defense they can muster, including, apparently the unsupported accusation that she is a prescription drug abuser.  Plaintiff Witt submits that the time has come for this Court to put a stop to this.

meet and confer session, the Plaintiffs provided additional documents to the Defendants, including a myriad of documents from the CMA case, despite the fact that these documents are largely irrelevant. Plaintiffs continued to work on their responses to Defendants' contention interrogatories, but have been unable to draft complete responses as a direct result of the Defendants' refusal to produce numerous documents, including various policy and procedures manuals and full copies of their Results Returned and Multstate databases.

Regarding the scheduling of the depositions, Plaintiffs made their clients available as soon as the clients' work schedules permitted.  There was no intentional delay by the Plaintiffs in that regard and the Defendants successfully worked the process in scheduling their own witnesses such that they were able to depose the Plaintiffs before the Plaintiffs conducted a single deposition.

While mostly a tangential issue, the Defendants also complain in their motion that the Plaintiffs unilaterally cancelled depositions in Florida after noticing them late in the discovery period.   First and foremost, Defendants served supplemental 26(a)(1) disclosures with only two weeks remaining in the discovery period. These disclosures identified numerous witnesses that had never been mentioned in discovery or even in the related *Henderson* matter. Plaintiffs noticed the depositions of these individuals almost immediately and took some of them as scheduled—including two of the three depositions noticed in Florida.  To the extent that the Defendants intended to leave the Court with the impression that their opponents allowed them to travel to Florida only to cancel all of the depositions at the last minute, thus wasting their time -- such a misrepresentation would cross the line into conduct unbecoming of Virginia attorneys. Two of the three Florida witnesses were deposed.  The third witness, Knowles, is the same individual who has now admitted to manually manipulating the Results Returned data.   His

deposition was only cancelled after it was revealed that there were issues with the production of the Results Returned database printouts in this case, as well as the Results Returned database copy in the *Henderson* matter.  Given the seriousness of the issue, Plaintiffs postponed this deposition such that they could depose him after the complete contents of the AS400 system were produced, either in this matter or *Henderson.* There was no nefarious or otherwise improper conduct, beyond trying to save litigation costs on both sides in the face of sweeping discovery noncompliance, and Plaintiffs are confident that the Defendants did not intend to leave the Court with that impression.

## ARGUMENT

I.   **Plaintiffs are unable to fully respond to Defendants' improper contention interrogatories because of the Defendants' failure to respond to discovery.**

Most of Defendants' legal contention interrogatories are set forth in Defendants' First Set of Interrogatories to All Plaintiffs (attached as Exhibit "1"). Defendants also served a contention interrogatory to Plaintiff Witt regarding her individual 1681e(b) claim (attached as Exhibit "2"). As discussed in greater detail below, these contention interrogatories are improper because they seek to discover issues of pure law and because they are impermissibly broad. But to the extent that they are proper, Plaintiffs have not been able to formulate complete responses because of the Defendants' withholding of information and documents throughout the discovery process.

   A.   *The Defendants' legal contention interrogatory responses are improper.*

While some limited contention interrogatories may be allowed under Fed. R. Civ. P. 33, the Advisory Committee Notes are clear that interrogatories seeking issues of "pure law" are not permissible. 1970 Advisory Committee Notes to Fed. R. Civ. P. 33(b).[2] As an example of what it

---

[2] Fed. R. Civ. P. 33(b) has since been renumbered. The same language is now found in Rule 33(a)(2).

4

had in mind as "pure law," the Committee Note pointed to *U.S. v. Maryland and Virginia Milk Producers Ass'n*, 22 F.R.D. 300, 302 (D.D.C. 1958), in which Judge Holtzoff held: "To answer it would be, in effect, to submit a skeletonized brief on the facts and the law**. It is not the purpose of discovery to ascertain what arguments the opposing party intends to use in support of his contentions.**" *See also* § 2167 Scope of Interrogatories—Opinions, Contentions, and Conclusions, 8B Fed. Prac. & Proc. Civ. (3d ed.); *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 102 (D. Md. 2012) (contention interrogatories only permissible to the extent that they relate to the application of law of fact). As the Middle District of North Carolina has observed:

> A court may be well advised to examine whether contention discovery is truly necessary in any particular case. As the United States points out, contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the benefit. In the ordinary case, the complaint, answer, disclosures, and discovery will provide sufficient information about a party's position until such time as the filing of the dispositive motions or trial briefs.

*BB & T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006). This acceleration is exactly what the Defendants' contention interrogatories seek to do. Taken together, Defendants' Interrogatories to All Plaintiffs seek an outline of what Plaintiffs will submit as their class certification brief. Most, if not all, of these interrogatories, concern purely legal questions, including the superiority of litigating this case as a class action instead of an individual case, whether damages can be determined on a classwide basis, whether Plaintiffs' claims are typical of the other class members, and whether common issues of law of fact will predominate over individual issues in the litigation. These interrogatories are clearly improper under the Rules.

Furthermore, Courts have held that contention interrogatories asking a party for "every fact and every application of law to fact" supporting identified allegations in the complaint were overly broad and unduly burdensome. "To require specifically 'each and every' fact and

application of law to fact could mean a laborious, time–consuming analysis, and perhaps irrelevant or trivial details." *IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998); *see also Moses v. Halstead*, 236 F.R.D. 667 (D. Kan. 2006); *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007) ("Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents."). But this is exactly what the Defendants' contention interrogatories seek to do. Defendants' contention interrogatories request either (1) "all facts or application of law to fact" (Interrogatory Nos. 3-9 to All Plaintiffs); or (2) "each and every fact or application of law to fact" (Interrogatory Nos. 10-12 to All Plaintiffs; Interrogatory No. 6 to Plaintiff Witt). These are clearly overbroad interrogatories that are improper under the Rules, despite the recitation of some of the Rule 33 language, because of their sweeping scope.  To be sure - more narrowly constructed contention interrogatories may have a purpose.  For example, the Court can imagine a personal injury case where one side was asked to describe all facts that support the other side's position that a supermarket did not exercise ordinary care in keeping the premises safe.  But where a Defendant asks a Plaintiff, as in this case, to state "all facts or operations of law to fact upon which you rely to show that a class action is the superior method of adjudicating the claim for which you seek to certify a class or classes" (Interrogatory No. 7), such a request is entirely directed at a preview of Plaintiffs' class certification brief and is not the proper subject of discovery.  Defendants make much ado about how they were supposedly prejudiced in their ability to depose the Plaintiff because they did not have an answer to this Request, but this borders on silliness.  Plaintiff Witt is not an attorney and is not even responsible for understanding that "superiority" is a Rule 23 element, much less all of the facts spread across discovery (or not yet produced) that would

6

support the superiority contention that her attorneys will eventually include in their class

certification brief.

Finally, contention interrog**a**tories cannot seek to invade the attorney work product

doctrine. *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 102 (D. Md. 2012); *Norco Indus., Inc. v. CPI

Binani, Inc.*, 2012 WL 6508624 (N.D. Ind. Dec. 13, 2012) ("[T]he court cannot fathom a manner

in which the factual basis [for a party's defenses] can be revealed without disclosing [the party's]

attorneys mental conclusions, legal theories, and conclusions. Discovery of the factual basis of

the defenses would reveal the attorneys impression of the facts and legal theory of the case.").

Here, the Defendants seek to discover the arguments that Plaintiffs' counsel intend to offer in

support of their motion for class certification. Certainly, at this stage, these arguments (which

will develop significantly as the Defendants comply with their discovery obligations and as

discovery progresses in this case) are still within the realm of the work product doctrine and are

not discoverable.

> B.    *Plaintiffs are unable to draft complete responses to Defendants' contention
>       interrogatories.*

Even if Defendants' contention interrogatories were more properly narrowed, Plaintiffs

cannot provide complete responses to them at this point in the case because of the Defendants'

continued discovery misconduct, which is outlined in Plaintiffs' pending Motion to Compel.

(Dkt. No. 117). Because of the Defendants' refusal to provide meaningful and substantive

responses to Plaintiffs' discovery requests, Plaintiffs have been deprived of the information

necessary to provide full responses to Defendants' contention interrogatories.

For example, Interrogatory Nos. 9 and 10 ask the Plaintiffs to "set forth each and every

fact or application of law to fact" regarding Plaintiffs' §§ 1681k(a)(1) and 1681k(a)(2)

allegations. Ex. 1 at 5-6. But Plaintiffs cannot provide a complete response that includes each

7

and every fact and application of law until the Defendants provide complete responses to the discovery requests that are the subject of Plaintiffs' pending Motion to Compel, including (1) Plaintiffs' RFP No. 30 to SafeRent, which seeks SafeRent's section 1681k compliance documents; and (2) Plaintiffs' RFP No. 20 to SafeRent, which seeks the details of how SafeRent obtained the criminal public records it attributed to Plaintiffs. Also critical to a formulation of a complete response to this interrogatory is the production of the Multistate database, which contains all of the information that the Defendants received about each of the public records in their system, either from the Courthouse, by bulk feed, webscrape, or otherwise. *Indeed, Plaintiffs just learned of the webscrape process in the last month - a direct contradiction to the positions taken in Henderson that the Virginia data was purchased.* By examining the information contained in the Multistate database, along with the Results Returned database, the Plaintiffs will be able to determine if the Defendants sold complete and up to date public record information to their customers. All of this information has been improperly withheld by the Defendants, but is necessary in order for the Plaintiffs to formulate a response to Defendants' Interrogatory Nos. 9 and 10.

Similarly, Interrogatory No. 12 asks the Plaintiffs to "set forth each and every fact or application of law to fact" regarding their allegation that the Defendants violated § 1681b. Ex. 1 at 7. Again, Plaintiffs cannot list every single piece of evidence that they will use to prove that the Defendants violated § 1681b until the Defendants fully respond to the following Request for Production of Documents: (1) Plaintiffs' RFP No. 17 to SafeRent, which seeks SafeRent's manuals containing its standards and/or requirements for authorizing or approving the sale of public record information to a third party; (2) Plaintiffs' RFP No. 5 to SafeRent, which seeks information regarding the Plaintiffs that SafeRent obtained from third parties; and (3) Plaintiffs'

8

RFP No. 37 to SafeRent, which seeks documents SafeRent possesses regarding its permissible purpose for the provision of Plaintiffs' reports to its customers. All of this information is critical to fully explain how the Defendants violated § 1681b in this case, but the Defendants have refused to respond to any of these requests. Each of these three document requests are the subject of Plaintiffs' pending Motion to Compel (Dkt. No. 117).

Additionally, Defendants' Interrogatory Nos. 2 through 8 seek information regarding the arguments Plaintiffs will offer in their class certification brief, including the ascertainability of the class, the typicality of Plaintiffs' claims, the common issues of law or facts in the case, adequacy of class counsel and the Named Plaintiffs, whether proceeding with this case as a class action would be superior to an individual case, and whether damages can be determined on a classwide basis. Ex. 1 at 4-5. But much of this information will be contained in the Defendants' Results Returned and Multistate databases. The production of these databases has also been addressed in Plaintiffs' pending Motion to Compel. (Dkt. No. 118 at 17-19.) As this Court is aware, the Results Returned database was thoroughly discussed in each of the three *Henderson* class certification motions and is no less relevant here. Given the recently discovered issues with the production of the Results Returned printouts in this case (which were manually transposed) and in *Henderson*, where an incomplete copy of the database was produced, not only are Plaintiffs unable to provide a complete response to Defendants' contention interrogatories, they are likely unable to provide an accurate response.

Finally, Defendants' Interrogatory No. 6 to Plaintiff Witt seeks "each and every fact or application of law to fact" that supports Witt's allegation that the Defendants violated § 1681e(b). Ex. 2 at 3. As discussed in Plaintiffs' Motion to Compel, the documents and information that the Defendants produced in two other SafeRent cases, *Taylor* and *Williams*, are

critical in formulating a complete response to this request. (Dkt. No. 118 at 9-11). For example, both cases concern the Defendants' loose matching criteria and procedure documents that have not been disclosed, listed in a privilege log, or otherwise produced in this case. *Id.* These documents, especially the matching procedures for placing criminal records into a consumer report are highly relevant to Ms. Witt's § 1681e(b) claim.

Court have recognized the difficulties of responding to contention interrogatories in the early stages of a case. *In re eBay Seller Antitrust Litig.,* No. C07–1882 JF (RS), 2008 WL 5212170, at *2 (N.D. Cal. Dec. 11, 2008) (noting answers to contention interrogatories early in the discovery process "would be of questionable value to the goal of efficiently advancing the litigation"); *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, No. 3:14CV51, 2015 WL 4878880, at *4 (W.D. Va. Aug. 14, 2015); *Monsanto Co. v. E.I. Du Pont De Nemours and Co.,* No. 4:09–cv–686–ERW, 2012 WL 27936 *2 (E.D. Mo. Jan. 5, 2012) ("Contention interrogatories need not be fully answered until discovery is near completion"); Order at 1–3, *SFA Sys., LLC v. Amazon.com, Inc.,* No. 6:11–cv–052–LED (E.D. Tex. Apr. 11, 2013), ECF No. 400 (denying without prejudice motion to compel SFA's response to an interrogatory seeking its invalidity rebuttal contentions prior to Amazon providing its expert's invalidity report); *HTC Corp. v. Tech. Props. Ltd.,* No. C08–00882 JF (HRL), 2011 WL 97787, at *3 (N.D. Cal. Jan. 12, 2011) ("[D]iscovery is still in full-swing, and Defendants have not shown a real need for supplemented responses at this point in time. HTC, however, shall supplement its responses to these interrogatories within 30 days after the filing of the parties' Joint Claim Construction and Pre–Hearing Statement as it proposed."). Hemming the Plaintiffs into a fixed position without adequate information from the Defendants—which would be the result if this Court were to grant Defendants' motion—is not the kind of discovery process envisioned by the Federal Rules. *Roth*

*v. Commonwealth,* No. CIV–79–36E, 1988 WL 43963, at *4 (W.D.N.Y. May 4, 1988) (Rule 33(a)(2) "protects the responding party from being hemmed into fixing [its] position without adequate information."); *see also Carson Optical, Inc. v. Prym Consumer USA, Inc*., No. CV 11-3677, 2012 WL 7997611 at *1 (E.D.N.Y. Sept. 7, 2012) (quoting *Roth*).

Plaintiffs are rightfully concerned about providing contention interrogatory responses at this stage of the litigation. In *Henderson*, where contention interrogatories were answered early in the discovery process, Defendants sought to limit Plaintiffs' counsel's arguments to only what was listed in Plaintiffs' discovery responses and claimed that any additional legal arguments were unfairly made. This litigation tactic illustrates why such "pure legal" contention interrogatories are improper.  Given the Rule 26(e) duty to supplement their responses, Plaintiffs' counsel would be responsible for notifying the Defendant every time they read a new decision that might impact the litigation, or internally reached a new legal strategy in the case - effectively giving the Defendant an improper and continuous window into their work product and their thought processes regarding the case.

## II.     Plaintiffs do not object to the entry of a Consent Order regarding the confidential settlement agreements.

Plaintiff Witt is unable to produce unredacted versions of the individual settlement agreements in the CMA and HR Plus lawsuits absent a Court Order because the settlement amounts are confidential. While Plaintiffs have not seen a proposed Consent Order regarding the production of this information, they do not object to the entry of such an order. They do however, object to the Defendants' request that they be allowed to reopen Ms. Witt's deposition after the settlement amounts are produced. There is no reason that Defendants would need to ask Ms. Witt any further questions about the amounts of her individual CMA and HR Plus settlements.  The amount she was paid by other Defendants to satisfy other claims in other cases

based on their conduct (not NBD or SafeRent's conduct) is entirely irrelevant here.  It bears noting that Witt did provide the Defendants with the entirety of the settlement agreements, redacting only the settlement amounts, such that they could understand that the claims in this case were not released.  Yet the Defendants chose to bring this issue before the Court - providing the same degree of substantiation for the relevance of the settlement amounts as they did in the meet and confer process - none.  Regardless, if the Court enters an Order requiring the disclosure, Plaintiff Witt will of course provide this information.

## III.     The HR Plus documents have largely already been produced.

Defendants requested that Ms. Witt produce "any lawsuits for which you have been named as a Plaintiff or Defendant within the last three years, including all pleadings, deposition transcripts, and documents produced by you in any such lawsuit." Request for Production of Documents to Carolyn Witt No. 27 (attached as Exhibit "3") Defendants argue that Plaintiffs have not responded to this request insofar as it seeks information regarding one of Ms. Witt's lawsuits, *Henderson v. HR Plus*, 3:14-cv-82 (E.D. Va.). But that is simply not true. There are no deposition transcripts, as there were no depositions taken in the case and all of the pleadings are publically available on PACER.  Most of the documents that Ms. Witt produced in the HR Plus case are simply duplicates of the documents that she has already produced in this case. For example, Ms. Witt produced the following documents in the HR Plus case:

- The documents that she produced in the CMA case. These have been produced in this case at Bates Nos. WITT – 000002-62.

- The Norfolk and Virginia Beach Circuit Court docket sheets for the Carolyn Barnes convictions. These have been produced in this case at Bates Nos. WITT – 000064-78 and WITT – 000207-25.

- Documents regarding her involvement in two prior divorce cases and *Witt v. CMA CGM*. These have been produced in this case at Bates Nos. WITT – 000398-412.

- The Virginia Beach and Norfolk Circuit Court case files for Carolyn Barnes that the Defendants erroneously attributed to Ms. Witt. These have been produced in this case at Bates Nos. WITT – 000080-205 and WITT – 000227-396.

The only remaining documents that Ms. Witt produced in the HR Plus case were a second version of her cover letter and resume with several recommendation letters attached and her tax returns from 2009 through 2013. Regarding the resume and recommendation letters, the cover letter and resume that she submitted to CMA, which was almost identical, was produced to the Defendants in this case, as were all but two of the recommendation letters (Bates Nos. WITT – 000507-21). It is highly doubtful that the slightly different resume format and two additional recommendation letters speak to any issue in this case or shed any light on Defendants' statute of limitation defense.  Again - the Defendant's theme here is to defend by attacking.

Similarly, Ms. Witt's 2009-2013 tax returns are irrelevant to this case and she should not be required to produce them. The Fourth Circuit has not developed a clear rule as to the discoverability of income tax returns in particular. However, the general federal rule is that disclosure of tax returns is disfavored. *E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.,* 96 F.R.D. 147, 148–49 (E.D. Va. 1982) ("a 'qualified' privilege emerges from the case law that disfavors the disclosure of income tax returns as a matter of general federal policy") (citations omitted). The majority rule that has emerged from federal case law is that a two-prong test should be applied to determine when the qualified privilege protecting income tax returns is overcome. *Terwilliger v. York Int'l Corp.,* 176 F.R.D. 214, 216–17 (W.D. Va. 1997). Under this test, tax returns are discoverable if (1) they are relevant to a matter in dispute; and (2) they are

needed, because the information is not available from other sources. *Id.* at 217. First, they are not relevant to this case. The information contained in Ms. Witt's tax returns from 2009-2013 do not have any relevance to whether the Defendants violated the FCRA or whether the class should be certified, nor is it relevant to any of Defendants' defenses. Regardless, the burden to show the relevance of Ms. Witt's tax returns lies with the party seeking disclosure. *Id.* As for the second prong, any information contained in the tax returns could have been obtained from a different source if the Defendants needed it. They could have propounded an interrogatory or asked the question during her deposition.  What is really at issue?  Her gross income?  The number of deductions that she took?  The nature of her charitable contributions?  Discovery is not unbounded, and while the term "fishing expedition" is perhaps overused, that is exactly what is going on here.  Ms. Witt should not be compelled to produce her tax returns in this case.

Regarding any documents that HR Plus produced in the HR Plus case, the vast majority of HR Plus's document production was labeled confidential. The Protective Order in that case required Plaintiffs' counsel to destroy or return all confidential documents within 60 days of the conclusion of the case. *See* Protective Order ¶ 10 (attached as Exhibit "4"). The HR Plus case concluded on June 22, 2015 and therefore these documents are no longer in Ms. Witt's (or even her counsel's possession). The handful of documents in that case that were not labeled as confidential and that were produced by Ms. Witt were produced at in this case at WITT-000433-502 and were specifically labeled as "Non-Confidential Documents Produced by the Defendant, in *Henderson, et al. v. Allied Barton Services, LLC dba HR Plus,* No: 3:14-cv-82 (E.D. Va.) that pertain specifically to Carolyn Witt." HR Plus also produced the same Virginia Beach and Norfolk Circuit Court docket sheet printouts that have been produced in this case at Bates Nos. WITT – 000064-78 and WITT – 000207-25.

14

Accordingly, Ms. Witt has provided a full response to the requests seeking production of the HR Plus case documents and the Defendants' motion regarding this category of documents should similarly be denied. [3]

## CONCLUSION

Plaintiffs will provide responses to Defendants' contention interrogatories as best they can once the Defendant has complied with its discovery obligations.   To the extent that the Court believes that the settlement amounts are relevant such as to justify disturbing the confidentiality agreement between Plaintiff Witt and HR Plus/CMA - a considerable settlement term routinely insisted upon by Troutman Sanders when it settles its own cases - she would not object to entry of an Order requiring her to produce the confidential settlement amounts in the HR Plus and CMA cases. Finally, the Defendants are already in possession of the documents from the HR Plus litigation, aside from a handful of irrelevant documents that have no bearing on this case as described herein.  Plaintiff Witt is nonetheless producing her resume and recommendation letters, withholding only her tax returns which are irrelevant.  Defendants' motion should be denied.

---

[3] Defendants' memo discusses Plaintiffs' response to RFP No. 27 to Carolyn Witt. To the extent it is also seeking to compel a response to RFP No. 28, that request seeks literally "Any and all documents, as those terms are defined herein, in the possession, custody or control, or otherwise available to Plaintiff, which directly or indirectly refer, relate, constitute, reflect, evidence, or in any way pertain to any civil, criminal, or bankruptcy case in which Plaintiff has been a party or witness within the past ten (10) years." In response, Plaintiff Witt referred the Defendant to her response to RFP No. 27, which contains all of the information that is relevant to this case. See Ms. Witt's Responses to Defendants' First Set of Requests for Production of Documents (attached as Exhibit "5"). To the extent that Defendants are seeking literally every piece of paper related to the HR Plus case, Plaintiff Witt has objected to that request as overly broad, unduly burdensome, and because it seeks information that is irrelevant to this case. *See* Ms. Witt's Objections to Defendants' First Set of Requests for Production of Documents (attached as Exhibit "6").

Respectfully submitted,
**PLAINTIFFS,** *for themselves and on*
*behalf of all similarly situated individuals*,


By_____/s/_____
            Of Counsel

Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel: (703) 273-7770
Fax: (888) 892-3512
matt@clalegal.com
casey@clalegal.com

*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2016, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony, VSB No. 31696
Alan D. Wingfield, VSB No. 27489
Timothy J. St. George, VSB No. 77349
H. Scott Kelly
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel:    804-697-5410
Fax:    804-698-5118
david.anthony@troutmansanders.com
alan.wingfield@troutmansanders.com
tim.stgeorge@troutmansanders.com
scott.kelly@troutmansanders.com

Ronald I. Raether, Jr.
Troutman Sanders, LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Tel:    937-227-3733
Fax:    937-227-3717
ronald.raether@troutmansanders.com

*Counsel for the Defendants*

_____
/s/
Matthew J. Erausquin, VSB No. 65434
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com