UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CAROLYN WITT, *on behalf of herself and all others similarly situated*, | : : : |
| Plaintiff, | : : |
| v. | : Civil Action No: 3:15-cv-386 |
| | : |
| CORELOGIC SAFERENT, LLC, *et al.*, | : : |
| Defendants. | : |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

The Plaintiff, by counsel, respectfully submits the following memorandum of law in support of her Motion to Compel.

### I. BACKGROUND

Plaintiff issued her first set of discovery requests to the Defendants on July 8, 2016 (Plaintiff's "2016 discovery requests"). These requests have already been the subject of a previous motion to compel, which the Court ruled on, and granted, on December 14, 2016. (Dkt. No. 143). After the order was issued, the Defendants supplemented some of their responses to the discovery requests, producing a very modest number of new documents, plus the documents it had previously produced in the District of Maryland *Williams* case. Maybe not unexpectedly, Defendants continued to take a very narrow view of their discovery obligations and of the Court's December 14, 2016 Order. Based upon what had been produced so far, Plaintiff drafted and served new discovery. Witt served her Fourth Set of Requests for Production of Documents on SafeRent and her Second Set of Requests for Production of Documents on NBD on February 28, 2017 (Plaintiff's "2017 discovery requests"). Most of these requests were targeted at very specific information that Plaintiff had previously requested in discovery, but that the Defendants refused to produce. Plaintiff hoped that she could avoid the filing of another motion to compel by

serving a final round of targeted and specific requests. However, after a series of in-person meetings, numerous telephone calls, and e-mails, it has become clear that the Defendants do not intend to comply with their discovery obligations in this case. Therefore, Plaintiff is left with no choice than to file another motion to compel.

Since the first meet-and-confer session on March 6, 2017, Plaintiff has discovered at least five categories of critical documents that the Defendants previously withheld from discovery. Each was requested by Plaintiff's 2016 discovery requests, but has only recently been produced. This observation is important for two reasons. First, Defendants do not get a second chance to object and withhold privileged documents that they should have produced and documents they should have logged prior to the December 14, 2016 Order. Second, Plaintiff is not seeking documents that she could have known and proven existed prior to prosecuting previous discovery motions. Instead, her motion is limited to documents and information that she discovered only after the Court's Order.

Despite Defendants' limited supplementations, it is obvious from the documents that there are numerous documents that are still being withheld from discovery. On April 5, 2017, and as a result of this Court's Order on Plaintiff's Motion to Compel (Dkt. No. 143), Defendants made several boxes of customer files available for the Plaintiff to review and inspect at the Defendants' office in Rockville, Maryland. These customer files included a partial set of NBD's communications with its Reseller customers, almost all of which regard FCRA compliance. *See* Ex. 1, NBD_Witt_Customer 3757-59.

There are also numerous documents in these newly discovered boxes that the Defendants had previously withheld from discovery and that unquestionably acknowledge NBD's belief that it is governed by the FCRA and that the reports its sells regard a specific consumer, is a

2

consumer report, and is for an employment purpose. Ex. 2, NBD_Witt_023532. These documents demonstrate that NBD's customers were required to submit extensive documentation and on-boarding paperwork before being given access to NBD's database and also reveal the presence of a rigorous audit process implemented by NBD to ensure that its customers comply with the FCRA. *Id.*; *see also* Ex. 3, NBD Audit Documents. The documents, including some print copies of internal email, evidence an established and routine FCRA compliance process. Certainly, this process had to come from somewhere, yet the Defendants have not produced any manuals, procedures, employee communications, or other documents regarding the audit process or how it was designed or implemented.

Despite numerous requests for them, the Defendants have also not produced any documents regarding their legal review of the FCRA or their compliance documents. Given their extensive audit process and on-boarding documentation (discussed above), there it is highly unlikely that there has been no legal review whatsoever or that the Defendants have no compliance documents. Furthermore, the Defendants have represented that the Plaintiff's proposed search terms are too broad and produce too many hits to feasibly review. Given that these search terms include "FCRA" and "consumer report", it is likely that there are numerous documents that the Defendants are withholding from production. And since no communications from these employees of NBD, Saferent and Corelogic were timely logged as privileged, they must be produced.

Plaintiff has also learned through the meet-and-confer process that many employees who perform work for NBD are actually employed by its parent company, CoreLogic, Inc. For example, all of the HR, legal, compliance, and accounting departments are all operated by CoreLogic, Inc. and its employees. However, none of this information has been disclosed to the

Plaintiff in discovery, including the cost of that NBD pays CoreLogic, Inc. for these services. The Defendants have also refused to disclose these important witnesses in this case or provide any substantive details regarding the legal relationships between the Defendants and their parent company.

## II. DEFENDANT HAS WAIVED PRIVILEGE AS TO MOST DOCUMENTS AS THEY WERE REQUESTED PRIOR TO THE DECEMBER 16, 2016 ORDER

The Court has already held that:

> To the extent that the Defendants are withholding documents on the grounds of privilege, and that no privilege log has been served, the privileges are waived; provided, however, to the extent that any request for production covers documents in the *Williams* and *Taylor* actions, and such documents have been held by the presiding judge in either, or both of those actions, to be privileged, the Defendants shall list the responsive documents in detail and identify them as privileged pursuant to an order of the presiding Court in those cases and shall provide to the counsel for the Plaintiffs a copy of the court order that confers privilege and shall correlate in their written responses the part of the court order or opinion that is said to confer privilege upon the identified documents (on a document by document basis).

Dkt. No. 143 at 6. Therefore, to the extent that that Defendants have any privilege objections regarding Plaintiff's 2017 discovery requests, those privilege protections have been waived *to the extent that the documents were already requested by her 2016 discovery requests*. And as detailed below, most of Plaintiff's newly-issued discovery was duplicative of previous requests because the Plaintiff believed that Defendants were not complying with their discovery obligations and had withheld substantial documents from discovery.

For example, Plaintiff already requested the emails from NBD's operational custodians in the following requests from her 2016 discovery requests:

- Request No. 14: "All marketing, sales, or other promotional material that were created for publication to employers and potential subscribers relating to the characteristics of NBD's employment consumer reports;"

4

- Request No. 34: "All documents evidencing NBD's FCRA compliance procedures or any changes thereto since June 2010;" and

- Request No. 35: "All communications in any form between NBD and any of its subscribers since June 2010 which reference any of 1681b, 1681e, 1681k (or Section 604, 607, and/or 613 of the FCRA."

*See* Pl.'s First Reqs. Produc. Docs. To NBD (attached as Exhibit "4"). Similar requests were served on SafeRent. *See* Pl.'s First Reqs. Produc. Docs. To SafeRent, Req. Nos. 25, 48, 49 (attached as Exhibit "5") (s*ee also* Req. No. 17: "All policy and procedure manuals regarding SafeRent's standards and/or requirements for authorizing or approval of the sale of criminal records, civil judgments, or bankruptcy information to a third party.").

In addition, Plaintiff already requested the internal communications within Defendants' legal department, including the application of the FCRA to NBD's sale of the criminal record data, as well as the FCRA-related provisions of NBD's consumer contracts, when she requested "All documents evidencing NBD's FCRA compliance procedures or any changes thereto since June 2010." Ex. 4 at Req. No. 34; Ex. 5 at Req. No. 48.

Privilege has been waived as to all of the requests listed above. Therefore, to the extent that Defendants are attempting to claim privilege to the 2017 discovery requests that seek the same documents and information, the Court should overrule their objections and order the documents produced.

### III. DEFENDANTS SHOULD AGAIN BE COMPELLED TO PRODUCE DOCUMENTS AND ANSWER INTEROGATORIES

**A. Plaintiff asks the Court to order production regarding discovery served in 2016.**

**1.** *Witnesses*. Plaintiff asked both Defendants to identify persons with knowledge about the facts and allegations in this action. (Ex. 1, Pl.'s First Interrogs. to NBD, Interrog. No. 1). Defendants made multiple supplemental responses. However, in the meet-and-confer

attempts regarding the Plaintiff's 2017 discovery requests, Defendants revealed important new witnesses as their relevant document custodians. There are several witnesses that the Defendants have never disclosed as witnesses in this case. Many of these names are contained in the consumer files. Others were identified as operational custodians that would be used to conduct ESI searches. Some of these individuals include Cindy Cook (CoreLogic's contract administrator, Dominique Matthews (Corelogic's senior client services analyst), and Asia Whitaker (CoreLogic's senior account executive), and a number of compliance and legal CoreLogic, Inc. employees, amongst others. It is long past time that Defendant disclose all of the witnesses that have information regarding this case.

Plaintiff seeks an order that Defendants supplement their Interrogatory responses and they ask for additional time to depose these newly revealed witnesses.

**2.** *Relationships between the two Defendants.* Defendants earlier resisted certain discovery based upon the claim that SafeRent and NBD were entirely separately owned, operated and managed entities. However, in the meet and confer attempts regarding the Plaintiff's 2017 discovery requests, Defendants revealed important new witnesses—all of the legal and compliance employees—that were employees of SafeRent and the parent company, CoreLogic, Inc. Plaintiff has also learned that NBD does not operate its own operational management departments—human resources, accounting, legal, compliance, etc.—exposing the co-Defendant, SafeRent, and parent company, CoreLogic, Inc., to liability for the NBD violations alleged in this case. Plaintiff asks that Defendants be compelled to respond substantively detailing all of the facts regarding the legal relationships between the Defendants. Ex. 6, Pl.'s First Set of Interrogs. To NBD., Interrog. No. 10; Ex. 4, Pl.'s First Reqs. for Produc. Docs. to NBD, Req. No. 16; Ex. 5, Pl.'s First Reqs. for Produc. Docs. to SafeRent, Req. No. 24.

3. *Procedures and policies regarding application of and compliance with the FCRA; internal compliance investigations*. The various processes and procedures revealed in the new customer-file boxes revealed documents and information that should have been produced in response to 2016 discovery requests. Defendants have also now served a new privilege log and resisted production of new documents in response to 2016 discovery requests based on a purported right to continue to assert privilege as to these 2016 requests. Ex. 6, Interrog. No. 13; Ex. 4, Req. Nos. 21, 23, 34; Ex. 5, Req. Nos. 12, 27, 34, 36, 49.

4. *Communications with Reseller customers re: sales, setup and/or the FCRA*. In April, as discussed above, Defendants made available a large number of boxes of old customer files in response to Plaintiff's requests ordered in December 2016. Ex. 4, Req. Nos. 14, 35. However, when inspected, those files were incomplete, lacking a large number of customer files, full sets of communications and attachments referenced in the files and most e-mail with the customers.

Contrary to their representations, Defendants did not provide all of the customer files for Plaintiff's inspection. Instead large numbers of files appeared to be missing, evidenced by Defendants' own number system. Defendants assign all of their customers file numbers that begin with "E" and then a number. It appears that client numbers were assigned in sequential order. However, in the boxes that the Defendants allowed the Plaintiff to inspect, there were large ranges of missing file numbers. Despite Plaintiff's request that they do so, Defendants have not made the missing customer files available for inspection.

In addition, it was apparent that several documents were missing from the files. For example, Defendants had an audit procedure in place whereby they required their customers to send a copy of the form signed by a consumer authorizing his or her background report to be

accessed. In all cases that the Plaintiff saw, the actual disclosure forms were not contained in the file. In some instances, a fax cover sheet showing the submission of the authorization form was included in the file, but the attachments were missing. Ex. 7, NBD_Witt_Customer_4164-65.

In addition, there was no dispute information in the customer files. In her deposition, Linda Watts testified that any disputes that were mailed to the Defendants were stored in paper files. Exhibit 8, Deposition of Linda Watts at 16:10-18 ("Q. Right. So the disputes that your receptionist picked up would she scan those into the system such that you were actually looking at a hard copy of the dispute within that application? A. No. Q. So how were those disputes stored or catalogued? A. The -- any paperwork received was stored in a paper file.").

Plaintiff requests the production of e-mails and mirror copies of the hard drives of the operational employee who handled these customer communications.

5. *Defendants' communications with the Supreme Court of Virginia.* Ex. 4, Req. Nos. 20, 48. The Defendants included a single e-mail chain with Robert Smith, who manages data for the Office of the Executive Secretary. It is obvious from the e-mail that the parties were already acquainted with each other and the e-mail itself references previously exchanged information. The Defendants should be compelled to produce the remaining communications.

B. **Defendants have failed to substantively respond to Plaintiff's 2017 discovery requests, including Plaintiff's ESI discovery requests.**

*1. ESI.*

One of the largest outstanding issues between the Parties is the Defendants' failure to produce large amounts of e-mails and other electronically-stored information. The Parties have discussed this issue at length, but have been unable to reach resolution on the issue.

The first meet-and-confer meeting regarding the ESI discovery occurred at the courthouse on March 6, 2017. During this session, the Defendants represented that the search

terms contained in Plaintiff's original requests resulted in 188,000 non-duplicative hits, which would take approximately 7,000 attorney hours to review and produce. Based on this representation, Plaintiff agreed to work with the Defendants to narrow the terms for the ESI search.

The Parties agreed that ESI would be searched in three categories. First, Defendants would search the documents within the custody of the four employees of NBD that handled all of its operations. Second, NBD identified a list of eight custodians—two from the operations list—who would have custody of documents regarding the Defendants' review and drafting of its Reseller Service Agreement, the form contract within which NBD acknowledged that it was selling employment purpose consumer reports governed by the FCRA. Third, Plaintiff understood that Defendants would search the compliance and legal employees for FCRA compliance, procedures, and "reading" documents.

As for the third category, the Defendants have just repeatedly ignored it after that initial conference. They have not served a privilege log. They have not provided any search results. And they have not stated any position as to how they intend to deal with those ESI documents.

The Parties did not agree to search terms during the March 6 session. Instead, Plaintiff proposed a narrowed set of terms and asked Defendants to provide the number of hits that those terms produced. If the narrowed search terms still returned an unmanageably large number of documents, Plaintiff committed to considering a further narrowing of the terms. Defendants also committed to providing a firm date that they would provide a privilege log for these documents by close of business March 8, 2017. And even though the Parties agreed that the Defendants could still raise a valid privilege objection as to these requests,[1] Plaintiff's counsel believed that

---

[1] Plaintiff reminded Defendants, however, that to the extent that any document responsive to the

all remaining objections to these requests had been resolved. Had there been any outstanding objections, Plaintiff's counsel would have addressed them that day with the Court, per the Court's instructions. (Dkt. No. 143.)

Following the March 6th in-person meeting, the Parties continued their discussion of the search terms. Plaintiff did not receive any communications from the Defendants until March 16, when they proposed a very limited set of search terms for the "contract review" emails from the legal department custodians. A week and a half later, on March 27, Defendants informed Plaintiff that a search of these limited terms would produce approximately 500 documents. The very next day, Plaintiff responded and indicated that, given the limited amount of documents at issue, there was no basis to use such limited terms. Plaintiff also provided additional search terms. On March 30—the date these documents were due—Defendants responded and stated that such a search was not workable because three of the terms alone would yield 47,000 documents and families. Defendants proposed another set of narrower search terms and represented that it would result in "7,000 or so documents covering every permutation of the NBD contract discussions." Plaintiff responded with her position—which is still the same as of the date of this filing—that given the limited number of documents at issue in this topic, it was not appropriate for the Defendants to delay their production by engaging in multiple rounds of search-term negotiations. *See* E-mail chain between Timothy St. George and Leonard Bennett (Mar. 16-30, 2017) (attached as Exhibit "9"). Had the Defendants run the search using the narrowed terms provided at the March 6 in-person meet-and-confer session, they likely could have produced all

---

search terms had also been requested by a previous discovery request, any privilege protection of the document had been waived by the Defendants' failure to previously provide a privilege log, as well as this Court's previous discovery order which specifically addressed the matter. (Dkt. No. 143).

of the emails by the deadline. Instead, they chose to delay this case further and withhold relevant documents from production.

Regarding the operational group of custodians, Plaintiff provided additional narrowed search terms on March 27. *Id.* On March 28, the Defendants stated that the proposed search terms for the operational group of employees returned 187,687 documents (or 337,037 documents with families), which they represented was not workable, and proposed new search terms, which would return 5,011 documents with families. Plaintiff immediately responded and asked for additional information regarding the search that the Defendants had conducted, including the specific identities of these people, whether their local email boxes or the central server had been searched, and what the corporate email retention policies were. Defendants responded on March 30, refusing to respond to any of Plaintiff's questions, and stated that because they believed their proposed terms to be reasonable, they would unilaterally execute the search in the absence of an agreement. *See* E-mail chain between Alan Wingfield, Matthew Erausquin, and Leonard Bennett (Mar. 28-30, 2017) (attached as Exhibit "10").

On April 11, 2017, the date that the Defendants had committed to producing the results from their unilaterally narrowed list of search terms, the Defendants incredibly served only <u>11</u> documents and a privilege log listing five withheld documents (out of a search that supposedly resulted in 12,000 emails), and for the first time stating that they were filtering the production for "relevance" and for "privilege." Even more troubling is the Defendants' refusal to produce any ESI other than e-mails, even though Plaintiff's requests were not so limited.

On April 18, 2017, the Parties conducted another in-person meet-and-confer session to discuss the outstanding issues, including the ESI issues. During this meeting, the Parties discussed the method that the Defendants had used to generate their document production,

including their use of a third-party vendor for the majority of the document review. Plaintiff stated her belief that the Defendants were placing too many restrictions on the search terms that they were using and that the Defendants should produce all of the 12,975 documents from their previous search. Defendants proposed three resolutions: (1.) Troutman Sanders reviewing all of the 12,975 emails for privilege and producing all non-privileged documents, which could be expedited by excluding certain attorney e-mail addresses and terms from the results; (2.) producing the quality control sample of 500 emails – the only documents actually reviewed by Troutman Sanders; and (3.) running some additional search terms and following up with Plaintiff about the number of hits generated by those terms. Plaintiff requested that the following search terms be added to the search—"consumer report," "FCRA," and asked that two additional custodians be searched—and the Defendants stated that they would run the searches, think about the logistics, and follow-up the next day.

Then, on April 19, 2017, Defendants emailed and offered a completely different proposal than the one discussed during the April 18 meet-and-confer session. They agreed to expedite a new review of the original 12,975 documents, but stated that they still intended to withhold documents that they unilaterally deemed irrelevant or privileged. Defendants' counsel then provided a list of search terms regarding the operational custodians and stated that they would conduct a search of the terms of Plaintiff's choosing, subject to a total 25,000 e-mail limit (to include the 12,000 e-mails already being reviewed) of documents Troutman Sanders would review (as opposed to produce). *Id.* Plaintiff rejected this proposal for several reasons. First, none of these documents are protected by privilege, including for the reasons discussed in Plaintiff's Opposition to Defendants' Motion for a Protective Order. (Dkt. No. 179.) Second, based on Defendants' previous conduct, Plaintiff believes that the Defendants would improperly withhold

the production of documents based on unfounded relevance concerns. Third, the Plaintiff does not agree that the Defendant should be able to place unreasonable restrictions on the searches being conducted, including narrowed search terms and an arbitrary limit of 25,000 documents. *See id.* As of the date of this filing, the issue remains unresolved and the Defendants have not produced any additional documents. Encompassed within this issue are the following:

*Plaintiff believes that Defendants have not satisfied or met the requirements at Rule 26(b)(2)(B) necessary to justify withholding electronic documents based on burden.* The documents at issue are already in the possession of Defendants' counsel. They have not identified any burden addressed by that Rule and have withheld the documents based almost entirely upon a relevance objection;

*Plaintiff has objected to the manner in which Defendants have unilaterally determined which documents to produce.* Specifically, Defendants' counsel of record have not reviewed the documents at issue for relevance (or privilege) because Defendants have required that they outsource that work to 12 non-Troutman Sanders attorneys working for Defendants' litigation vendor in Texas (previously retained by the Defendants before this litigation was ever commenced) and who have not appeared in this matter or participated in the meet and confer effort;

*Defendants will not produce documents responsive to Plaintiff's proposed search terms for NBD's operational employees.* Even though Plaintiff believes that there is no basis to apply Rule 26(b)(2)(B), she proposed the following search terms for NBD documents generated by NBD's <u>operational employees</u>, based on the Defendants' litigation positions that they did not ever sell FCRA-governed products, consumer reports, or information used for an employment purpose: "consumer report", "FCRA", "Fair Credit Reporting Act", "reseller", "employment",

13

"employer", "background check", and/or "employment" within 7 words of "report". Defendants have refused that production and have not even reviewed an output of those results for privilege or relevance;

*Time searched for operational employees*. Defendants have limited their document searches from their <u>operational employees</u> to the time period from February 22, 2009 through February 9, 2012.

*Defendants will not produce documents responsive to Plaintiff's proposed search terms for employees who drafted and were responsible for NBD's standard Reseller Agreement.* In order to discover documents regarding Defendants' review of the form contract they use containing statements that their products are FCRA-governed employment-purposed consumer reports, Plaintiff sought communications related to the internal drafting of these form agreements. Defendants refused any production based on Rule 26(b)(2)(B). Plaintiff proposed narrowed search terms for these documents from the narrow list of relevant custodians: "reseller agreement", "reseller service agreement", "reseller" within 30 words of "agreement", "reseller contract", "reseller service contract", and "reseller" within 30 words of "contract".

Plaintiff asks the Court to order Defendants to produce all documents from February 9, 2009 to the present that include the terms Defendants used to conduct their search resulting in the 12,975 documents. Plaintiff will review those documents and within two weeks identify any additional search terms, to the exclusion of those already searched. Plaintiff also asks that the Court order this search to include the compliance and legal departments for Defendants and its assigned CoreLogic, Inc. personnel.

  2.  ***FCRA Compliance and Legal Reading of the Statute.***

Plaintiff requested production of documents regarding how Defendants came to the FCRA "reading" they now assert. Ex. 11, Pl.'s Second Reqs. for Produc. Docs. to NBD, Req. Nos. 4, 6, 7. *Plaintiff asked for a subset of the broader (2016) requests stated above (procedures and policies regarding application of and compliance with the FCRA; internal compliance investigations)*. The Defendants did not serve any documents or a privilege log to such earlier requests and cannot now do so.

3. *Documents produced to third-party customers*.

These requests seek the production of documents that the Defendants provided to their third-party customers. The documents requested are a subset of those previously requested in 2016. (communications with reseller customers re: sales, setup, and/or the FCRA). These include documents provided to the reseller customers in setting up NBD accounts. The newly-discovered boxes contain only a partial set of these documents. Ex. 11, Req. Nos. 8, 10, 18.

4. *Documents regarding relationships between the two Defendants and their parent company, CoreLogic, Inc.*

These requests seek the production of documents regarding the relationship between the two Defendants and their parent company, CoreLogic, Inc. The documents requested are a subset of those previously requested in 2016 (relationships between the two Defendants). Ex. 11, Req. Nos. 11, 13, 14.

5. *NBD's communications with third parties regarding FCRA*.

This request seeks the production of NBD's communications with third parties regarding FCRA. This is also a subset of, or similar to, Plaintiff's 2016 requests. Plaintiff seeks documents showing the positions NBD takes in its ordinary business outside of the constructions of this litigation. It regularly communicates with potential customers, government officials, and trade organizations regarding the issues raised in this case. Ex. 11, Req. No. 17.

15

*6.     These requests seek the production of e-mails including certain search terms.* Ex. 11, Req. Nos. 18, 19.  This is a subset of Plaintiff's broader 2016 requests.  Defendants have produced only 11 pages of these e-mails—four total e-mail chains. In response to two of the 2017 requests, Defendants have asserted an ESI position not previously raised until service of the 2017 discovery requests.  After two months of meet-and-confer conferences, calls, and written exchanges regarding Defendants' refusal to produce e-mails or other documents absent agreement to their proffered ESI search terms, Defendants recently produced just 11 pages of documents—each an individual part of just four e-mail chains. *See* Exhibit 12.  Plaintiff has asked for the production of electronic documents from NBD custodians using search terms that Defendants claim are too broad.

## IV.    REMEDY

Plaintiff seeks an Order as follows:

(a.)   compelling the Defendants' responses and production to the specific discovery requests as stated herein, specifically:

- Plaintiff's First Set of Request for Production of Documents to NBD, Request Nos. 14, 16, 20, 21, 23, 24, 34, and 35;

- Plaintiff's First Set of Request for Production of Documents to SafeRent, Request Nos. 12, 17, 24, 25, 27, 34, 36, and 49;

- Plaintiff's First Set of Interrogatories to NBD, Interrogatory Nos. 1, 10, and 13; and

- Plaintiff's Second Set of Request for Production of Documents to NBD, Request Nos. 4, 6, 7, 8, 10, 11, 13, 14, 17, 18, and 19.

(b.) compelling the production of the Outlook mailboxes of the Defendants' operational employees and all other PDF, Word, or Excel files found on their hard drives;

(c.)   compelling the production of the full set of disputes that NBD has receive for the past 5 years; and

(d.) awarding attorney's fees and costs related to Defendants' discovery abuse reaching back to 2016, including: (i.) their failure to answer Interrogatories pursuant to Fed. R. Civ. P. 37(d)(3); (ii.) for the issuance of improper objections and discovery responses pursuant to Fed. R. Civ. P. 26(g)(3); and (iii.) for the time specifically spent incurred in making the motion, including the associated meet and confer efforts, pursuant to Fed. R. Civ. P. 37(a)(5)(A) (with each such sanction to be assessed against the Defendants and not their Virginia counsel).

Plaintiff also seeks leave to continue her discovery through the date her summary judgment opposition is due, July 17, 2017. For the reasons stated above, Plaintiff respectfully requests that the Court grant her Motion to Compel.

> Respectfully submitted,
> **PLAINTIFF,** *for herself and on behalf of all similarly situated individuals*,
>
>
> By_____/s/_____
>         Of Counsel

Leonard A. Bennett, VSB No. 37523
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd., Ste. 1A
Newport News, VA 23601
Tel:    757-930-3660
Fax:   757-257-3450
lenbennett@clalegal.com

*Counsel for the Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of May, 2017, I have filed the foregoing electronically using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David N. Anthony, VSB No. 31696
Alan D. Wingfield, VSB No. 27489
Timothy J. St. George, VSB No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23218-1122
Tel:    804-697-5410
Fax:   804-698-5118
david.anthony@troutmansanders.com
alan.wingfield@troutmansanders.com
tim.stgeorge@troutmansanders.com

*Counsel for the Defendants*

                                                     /s/
                                  Leonard A. Bennett, VSB No. 37523
                                  Consumer Litigation Associates, P.C.
                                  763 J. Clyde Morris Blvd., Ste. 1A
                                  Newport News, VA 23601
                                  Tel:    757-930-3660
                                  Fax:   757-257-3450
                                  lenbennett@clalegal.com
                                  *Counsel for the Plaintiff*